**WESTERN INDEMNITY COMPANY, INC., Respondent,**

v.

**Gary Lynn ALLEY and Lana Kay Alley, Appellants.**

**No. 15171.**

Missouri Court of Appeals, Southern District, Division One.

Nov. 19, 1987.

Donald Rhodes, Bloomfield, for appellants.

Albert C. Lowes, Kathleen A. Wolz, Lowes & Drusch, Cape Girardeau, for respondent.

HOLSTEIN, Judge.

Gary Alley was the victim of an armed robbery, kidnapping, and shooting in which Kenneth Samuel Conway was a participant. This is a declaratory judgment action by Western Indemnity Company (Western)

seeking a determination of whether a homeowner's liability insurance policy issued by Western to Conway's parents provided coverage for damages to Alley and his wife as a result of Conway's criminal conduct. Following a trial to the court, judgment was entered for Western denying coverage. The Alleys appeal claiming that under the evidence in this case, the court should have found that Conway's conduct was negligent rather than intentional and that Conway was an insured under his parent's homeowner's policy. We affirm.

In a court tried case, the decree or judgment of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Wojtkowski v. Shelter Insurance Companies*, 702 S.W.2d 74, 76 (Mo. banc 1985). The facts in this case unquestionably demonstrate the existence of substantial evidence supporting the trial court's judgment.

On April 23, 1983, Gary Lynn Alley was working alone at a combination service station and convenience store located near I–55 in New Madrid County. At about 2:15 a.m., Billy Ray Kimball and Conway, driving an El Camino pickup, parked some distance from the entry to the convenience store near some fuel storage tanks. Kimball entered the store and after some preliminary conversation, pointed a semiautomatic pistol at Alley and instructed him to fill a paper sack with money. Alley did so. At some point during the robbery, Kimball realized that Alley knew him by name and could identify him.

Kimball ordered Alley outside into the El Camino. Alley, Conway, and Kimball left the store. After driving 15 to 20 minutes, Conway turned off onto a dirt field road and proceeded for approximately one-half mile before parking the vehicle. Conway and Kimball were apparently still concerned about being identified by Alley, because it was at that point that Conway reached over and grabbed Alley's eyeglasses. He crushed them and threw them outside the vehicle.

Kimball then exited the El Camino and ordered Alley to get out, empty his pockets, and turn over his watch, which Alley did. Kimball then ordered Alley to step away from the vehicle and stand still. At that time, Conway told Alley to run. After taking two or three steps, again on orders from Kimball, Alley stopped and turned facing Kimball. Alley began to plead for his life, telling Kimball he did not want to die. Kimball said he was going to get back in the truck and think about it. Approximately two minutes later, Kimball got out of the truck again. Alley again begged Kimball to spare his life, to which Kimball replied, "Well, I've been thinking about it. You're not worth it." Kimball then raised the pistol and fired it. The bullet struck Alley in the neck, knocking him to the ground. Kimball then got back in the El Camino, and Conway drove off. At no time did Conway attempt to help Alley or persuade Kimball not to shoot Alley. Alley managed to walk to a farm house a mile away. From there he was taken to a local hospital and treated for the wound.

Criminal charges were filed against both Kimball and Conway in New Madrid County. Conway entered pleas of guilty to the Class A felony of robbery in the first degree and the Class B felony of kidnapping.

On April 23, 1983, Conway was living in the home of his parents. On that date, Conway's parents had a homeowner's insurance policy with Western which provided liability insurance. The policy defined "insured" to include the named insureds and relatives residing in the household. However, the policy contained the following exclusionary clause:

> "Personal liability ... and medical payments to others do not apply to bodily injury or property damage which is expected or intended by the insured ..."

Judgment was entered declaring that Conway was not an insured under his parent's policy and that "... in any event said defendant is not afforded coverage under said policy of insurance because the alleged incident ... resulted from an act which was expected or intended by ..." Conway

to cause bodily injury to Alley. From that judgment, the Alleys appeal.

 Language in a homeowner's policy which excludes coverage for bodily injury or property damage caused to others which is either expected or intended from the standpoint of the insured, has been construed to exclude from coverage the insured's intentional acts. *Travelers Insurance Co. v. Cole*, 631 S.W.2d 661, 664 (Mo. App.1982). If Conway's conduct toward Alley was intentional, there is no coverage for Alley's injuries under Western's policy.

 No argument is made that the robbery, kidnapping, and shooting of Alley were unexpected or unintended results. Appellants argue that Conway negligently failed to warn Alley of the impending danger posed by Kimball, failed to summon aid, and failed to intervene on Alley's behalf. The evidence is clear that Conway was an active and willing participant in the armed robbery and abduction of Alley. Assuming Conway knew or should have known that Kimball was going to shoot Alley, Conway may have had a duty to warn of the danger, intervene on Alley's behalf, or send aid; but the failure to do so went far beyond a mere failure to exercise ordinary care. Injury is intentional if the insured acted with specific intent to cause harm. Intent to harm is usually inferred if the natural and probable consequences of an act produce harm. *Angelina Casualty Co. v. Pattonville-Bridgeton Terrace Fire Protection District*, 706 S.W.2d 483, 484 (Mo.App.1986). The trial court could correctly infer that the shooting by Kimball and the failure by Conway to take steps to protect Alley were done with the specific harmful intent to dispose of the only eyewitness to their crimes; a witness who could identify Kimball by name.

In their brief, the appellants also complain the trial court erred in finding Conway was not an insured under his parent's homeowner's policy. Implicit in that finding is a determination that Conway was not a resident of his parent's household on April 23, 1983. Even if Conway was an insured, there was no coverage for inten-

tional misconduct. We need not consider this point.

Judgment affirmed.

CROW, C.J., and GREENE, P.J., concur.