**MID–CENTURY INSURANCE COMPANY, Respondent,**

v.

**L.D.G., et al., Appellants.**

**No. WD 44585.**

Missouri Court of Appeals, Western District.

June 16, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 28, 1992.

Application to Transfer Denied Sept. 22, 1992.

Michael W. Manners, Kevin Blackwell, Paden, Welch, Martin & Albano, P.C., Independence, for appellants.

Lance W. LeFevre, Heilbron & Powell, Kansas City, for respondent.

Before BERREY, P.J., and ULRICH and HANNA, JJ.

ULRICH, Judge.

L.D.G., a minor, and her parents appeal from summary judgment in favor of Mid–Century Insurance Company ("Mid–Century"). Mid–Century instituted a declaratory judgment action to determine whether the homeowner's insurance policy issued by the carrier to Robert W. and Lihua McKinney, husband and wife, covered venereal disease and its resultant effects sustained by L.D.G. as a direct result of Robert McKinney raping the then two-year-old child. The policy contained a clause excluding bodily injury intentionally caused "by or at the direction of an insured or ... resulting from an occurrence caused by an intentional act where the results are reasonably foreseeable." Appellants contend the trial judge applied the wrong standard of law. The summary judgment is affirmed.

On December 29, 1986, Mrs. McKinney was baby-sitting L.D.G., a two-year-old girl, at Mrs. McKinney's home. Mrs. McKinney left L.D.G. alone with Mr. McKinney and, while his wife was away from the home, Mr. McKinney raped L.D.G. Following sexual contact with Mr. McKinney, L.D.G. contracted the sexually transmitted disease chlamydia. Mr. McKinney's deposition statement, taken in another case and filed with the trial court in this case, was that he was unaware he was a chlamydia carrier at the time of the rape. Mr. McKinney's statement was the only evidence regarding whether he knew he was infected with the disease. In the other case, L.D.G.'s father, acting as her next friend, sued the McKinneys, alleging in one of several counts that Mr. McKinney negligently transmitted chlamydia to L.D.G.

Mid–Century issued a homeowner's insurance policy to the McKinneys, which was in force on December 29, 1986. The policy provided that Mid–Century will "pay [for] all damages from an occurrence which the insured is legally liable to pay because

of bodily injury or property damage covered by this policy." The policy's exclusionary provision states that coverage does not extend to "bodily injury" which is either "caused intentionally by or at the direction of an insured, or ... [results] from any occurrence caused by an intentional act of an insured person where the results are reasonably foreseeable."

After L.D.G., by her next friend, filed suit against the McKinneys, Mid–Century initiated the declaratory judgment action seeking construction of the policy's exclusionary provision and determination whether the exclusionary clause is applicable to Mr. McKinney's conduct. Mid–Century filed its motion for summary judgment in the declaratory judgment action arguing that transmission of chlamydia by Mr. McKinney to L.D.G. was either expected, intended, or the reasonably foreseeable result of Mr. McKinney's intentional act of rape. The trial court granted Mid–Century's summary judgment motion, holding that the policy's exclusionary provision is applicable because the insured, Mr. McKinney, acted with the intent or expectation that bodily injury will result, even though the bodily injury that resulted is different either in character or magnitude from the injury that was intended. The trial court cited *Hanover Insurance Co. v. Newcomer*, 585 S.W.2d 285, 288 (Mo.App.1979), as authority for its decision. The trial court concluded that the insurance policy did not afford insurance coverage for any liability Mr. McKinney may have to L.D.G. and her family as a result of his intentional criminal act.

Appellants cite *American Family Mut. Ins. Co. v. Pacchetti*, 808 S.W.2d 369 (Mo. banc 1991), as controlling authority in this appeal. In *Pacchetti*, the Missouri Supreme Court addressed the issue of whether a homeowner's insurance contract's exclusionary provision that excluded coverage for bodily injury "which is expected or intended by any insured" barred coverage of the insured's act of either injecting a sixteen-year-old boy with pure cocaine, assisting the boy to inject himself, or providing the boy cocaine knowing that he would inject himself. The youth's immediate

death was caused by the injected cocaine, and the boy's family sued the insured, Mr. Pacchetti. *Id.* at 370. The homeowner's insurance provider, American Family Mutual Insurance Co., instituted the declaratory judgment action to determine whether the exclusionary provision in Mr. Pacchetti's homeowner's insurance policy barred recovery. *Id.* The court in *Pacchetti* decided that the insured's actions were not within the scope of the exclusionary provision. *Id.* The supreme court "affirm[ed] the judgment of the trial court, finding that the injury was within the liability coverage of the policy." *Id.*

The supreme court held in *Pacchetti* that "[i]t remains for the insurer to show that this particular insured expected or intended the result which occurred." *Id.* at 371. The court concluded that "what Pacchetti intended or expected is a question of fact for the trial court." *Id.* The insurance policy pertaining to this appeal, unlike the policy in *Pacchetti*, contains an additional provision excluding coverage for injuries resulting from the intentional acts of the insured which are reasonably foreseeable. Therefore, the summary judgment in favor of Mid–Century will be upheld if the record supports the finding that Mr. McKinney intended to transfer chlamydia to L.D.G. or that the transmission of chlamydia is a reasonably foreseeable result of the rape.

The current record does not support a finding that Mr. McKinney intended to transmit chlamydia to L.D.G. Mr. McKinney testified, by deposition in the civil action initiated by L.D.G.'s next friend, that he did not know he had chlamydia when he raped L.D.G. Mr. McKinney's deposition testimony was the only evidence presented regarding whether he intended to infect L.D.G. with a venereal disease. Thus, Mid–Century has failed to show that the insured, Mr. McKinney, intended L.D.G. to contract chlamydia from the rape. *Id.*

However, the absence of proof that Mr. McKinney intended the specific harm sustained by L.D.G. is not dispositive. The present appeal is distinguishable from *Pacchetti* in that Mr. McKinney's homeowner's insurance policy contains the provision ex-

cluding coverage for bodily injuries "resulting from an occurrence caused by an intentional action [by the insured] where the results are reasonably foreseeable." This clause requires a determination, which was not made by the trial court, of whether the transmission of a venereal disease, such as chlamydia, is a reasonably foreseeable result.[1] A reasonably foreseeable event is one "that a reasonable person would recognize ... could or might occur and that steps should be taken to prevent it." *Rogger v. Voyles*, 797 S.W.2d 844, 847 (Mo.App.1990). In *Rogger*, the lengthy discussion of foreseeability explains that "[F]oreseeability is not to be measured by what is more probable than not, but includes what is likely enough in the setting of modern life that a reasonably thoughtful person would take account of it in guiding practical conduct." *Id.* (Citation omitted). Accordingly, the transmission of a venereal disease, as a matter of law, is a reasonably foreseeable consequence of rape, which Mr. McKinney should have foreseen. Therefore, the trial court's summary judgment is proper and is affirmed.

BERREY, J., concurs.

HANNA, P.J., concurs in part and concurs in result in separate concurring opinion.

HANNA, Judge, concurring.

I concur in the result reached by the majority, but would take a different legal route to arrive there. I agree that the majority's "reasonably foreseeable" exclusion is applicable, but disagree that the other exclusion, "caused intentionally" is not. The majority would find coverage if the insurance policy's only exclusion was where the injury was "caused intentionally" by the insured. In the majority's view, *American Family Mut. Ins. v. Pacchetti*, 808 S.W.2d 369 (Mo. banc 1991), first requires that the harm intended must be the specific disease or injury which in fact results and second, the insured's intent to cause that specific injury must be judged

by a subjective standard. Absent the broader "reasonably foreseeable" exclusion, the majority would provide insurance coverage for one who commits a sexual assault against a minor. This should not be the law of this state. Neither the facts of this case nor *Pacchetti* should lead to such an interpretation.

I believe the issue is whether Mr. McKinney intended to cause "bodily injury," not whether he intended to transmit chlamydia or any other venereal disease. Mr. McKinney's subjective intent to pass chlamydia is irrelevant to the disposition of this case.

The facts are simple. While in the custody of Mr. McKinney's wife, the two year old child was raped by Mr. McKinney. Subsequently it was determined, and it appears to be undisputed, that in the course of the assault McKinney transmitted the disease of chlamydia to the child. McKinney pleaded guilty to a criminal charge of rape and was placed on probation.

In the underlying civil action, the petition prays for damages, which include severe physical and emotional distress and the transmission of chlamydia. After the civil action was filed, the McKinneys sought indemnity from their insurance company, Mid–Century, for any damages recovered in that action and insisted the insurer defend the claim, based on their homeowner's insurance policy. McKinney claimed he was unaware he had chlamydia prior to raping the child and, therefore, the insurance policy should provide coverage.

In response to the McKinney's demand for indemnification, Mid–Century filed a petition for declaratory judgment claiming the terms of the homeowner's policy excluded coverage. The trial court found there was no coverage and granted the insurer's motion for summary judgment.

On appeal, Mid–Century claims coverage is excluded because the nature of McKinney's action is of such a character that his intent to cause injury should be inferred as a matter of law. The McKinneys contend

---

**1.** Review of the court-tried proceeding will be affirmed "if, as a matter of law, the judgment is sustainable on any theory...." *Roberts Fertiliz-* *er, Inc. v. Steinmeier,* 748 S.W.2d 883, 886 (Mo. App.1988).

the specific harm resulting from Mr. McKinney's conduct was a venereal disease, chlamydia, and since McKinney didn't know he had the disease, he had no intent to transmit it to the child. The parties contentions frame the issue presented to this court; to wit, whether McKinney's sexual abuse of a minor falls within the homeowner's policy exclusions, because the "bodily injury" suffered was either "... caused intentionally by or at the direction of an insured, or ... result[ed] from any occurrence caused by an intentional act of an insured person where the results are reasonably foreseeable."

The majority's interpretation of *Pacchetti* requires the insurer to prove the insured subjectively intended the exact bodily injury which occurred in order to invoke the exclusion. It finds its authority in the statement, "... that this particular insured expected or intended the result which occurred." *Pacchetti* at 371.

The language, in both Pacchetti's and McKinneys' insurance policies, excludes coverage when the insured intends "bodily injury." Nowhere does either policy refer to the "specific injury which results." The insurance contract language should be given its commonly understood meaning and the clear meaning of that language should dictate what conduct is intended to be excluded. *See West v. Jacobs,* 790 S.W.2d 475, 477 (Mo.App.1990). Our courts should not rewrite the contract to a more narrow meaning and afford coverage where none exists. *See Auto Club Inter–Ins. Exchange v. Farmer's Ins. Co.,* 778 S.W.2d 772, 774–75 (Mo.App.1989) and *Protective Casualty Ins. Co. v. Cook,* 734 S.W.2d 898, 905 (Mo.App.1987).

To interpret *Pacchetti* as the majority does here, would provide coverage irrespective of the clear cut intention of an individual to injure or harm his victim. This court has equated the intent to kill in *Pacchetti* with the transmission of a specific venereal disease, chlamydia, in determining the intent required to exclude coverage in this

case. Missouri's case law, including *Pacchetti,* has never so restricted the character or degree of injury. *See Western Indemnity Co. v. Alley,* 740 S.W.2d 372 (Mo.App. 1987) and *Shelter Mutual Ins. Co. v. Parrish,* 659 S.W.2d 315 (Mo.App.1983), both of which refer to the terminology "bodily injury" in the insurance policy, without requiring an intent to cause the "specific injury" suffered.

The majority in *Pacchetti* did not interpret the "bodily injury" portion of the insurance contract, but focused exclusively on the insured's intent.[1] If a person intends to strike another in the stomach, but inadvertently strikes him in the head, it is not logical to declare his acts unintentional simply because he missed the target. It is more reasonable to understand *Pacchetti* as determining whether the intent was to harm or cause some "bodily injury" to the victim, not the specific harm which results.

The majority of this court interprets *Pacchetti* to provide insurance coverage for any and all intentional acts, so long as the specific injury which results is not the particular injury subjectively intended to be transmitted or caused. Not only is this view too narrow, the unique facts of this case should not justify the application of a subjective test of the insurer's intent.

Missouri has not addressed the problem of an insured's intention in the context of sexual abuse of a minor. However, it is not unexpected in situations where there is sexual abuse of a minor, that the law seems to carve out its own niche and makes exceptions and specific rules. Other states have addressed this exact issue with near unanimous consensus, that the harm resulting to the child was intended as a matter of law and a subjective test of the insured's intention is irrelevant. The reasoning of those cases is sound and the overwhelming tabulation in favor of rejecting a subjective test is compelling.

In *J.C. Penney Casualty Ins. Co. v. M.K.,* 52 Cal.3d 1009, 278 Cal.Rptr. 64, 804 P.2d 689 (1991), a 39 year old man admitted

---

1. I am aware the dissenting opinion in *Pacchetti* addressed the extent of the injury issue. However, the majority did not address the issue and we should not speculate as to how the majority would have interpreted the "bodily injury" language contained in the insurance policy.

he sexually molested a five-year old girl on twenty to twenty-five separate occasions over a period of approximately nine months. The man admitted he intended to molest the girl and that none of his sexual acts with her were accidental. *Id.* 278 Cal. Rptr. at 65, 804 P.2d at 690. He pleaded guilty to criminal charges, was sentenced to prison, and in a subsequent civil action was ordered to pay $500,000.00 to the child and her mother. The narrow issue before the court was whether the insurance company that issued a homeowner's policy to the molester was obligated under the policy to pay the amount of that judgment.

In the underlying action, the mother and child proceeded on theories of negligence and negligent infliction of emotional distress. In the action for declaratory relief brought by the insurer, the molester admitted that he intended to do what he did, that he knew the things he did were wrong, but that he did not intend to harm the child. A psychologist testified likewise to the molester's lack of intent to harm.

On appeal to the Supreme Court of California, the insurer contended coverage was excluded because the molestations were intentional. The defendants responded that even an intentional and wrongful act is not excluded from coverage, unless the insured acted with a preconceived design to inflict injury. They also contended the psychiatric testimony showed molesters, including the molester in this case, often intend no harm despite the depravity of their acts, and the molestation is often a misguided attempt to display love and affection for the child.

The Supreme Court held there was no coverage as a matter of law. The court stated that no rational person could reasonably believe sexual fondling, penetration, and oral copulation of a five-year old child were nothing more than acts of tender mercy. The court went on to state that, except in the present case, every court to decide this issue under California law has held a homeowner's insurance policy does not provide liability coverage for child molestation and most other states which have considered the issue, almost without excep-

tion, have held there is no coverage. *Id.* 278 Cal.Rptr. at 68, 804 P.2d at 693.

In further discussion of the Court of Appeals' decision concerning child molestations, the Supreme Court said:

"Some acts are so inherently harmful that the intent to commit the act and the intent to harm are one and the same. The act is the harm.

Child molestation is not the kind of act that results in emotional and psychological harm only occasionally. The contrary view would be absurd." *Id.* 278 Cal. Rptr. at 72, 804 P.2d at 698.

In considering other states' decisions the Supreme Court stated:

"To allow coverage for child molestation would be contrary to the almost unanimous rule in other states. We are not aware of any decision by a state's high court that allows coverage for child molestation.... Suffice it to say that in denying coverage, other courts have relied in large part on a realistic view of child molestation. The view was well put by a Florida justice: '... I am absolutely unwilling to deny the foreseeability of injury to a child who is subjected to sexual abuse. It defies human response and sensitivity to conclude that the inevitable product of the sexual molestation of a child is not intended. That conduct inescapably inspires some response in the minor victim. Whether the response is a precocious excitation of libido, an utter revulsion or simply confusion, the child suffers grave psychological injury.' "

In *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 581 N.Y.S.2d 142, 589 N.E.2d 365 (1992), the defendant was sued for the physical and emotional injuries sustained by a six-year old girl and a nine-year old boy upon whom he had committed acts of sodomy and sexual abuse while the children were in the care of his wife, the baby sitter. The defendant claimed his homeowner's insurance carrier should afford a defense and indemnification for damages. The insurer claimed there was no coverage. The decisive question was whether the damages sought fell within the policy exclusion for bodily injury *"intentionally*

*caused by an insured person."* [Emphasis added].

The defendants argued that because the complaint against them contained allegations of negligence and unintended injuries from intentional conduct, the policy exclusions for the resulting bodily injury did not apply and further, that the insurer was obligated to provide them with a defense. The insurer maintained that an intent to injure was inferable as a matter of law because of the very nature of the action.

The criminal sexual abuse indictment against the defendant had been dismissed as a result of plea negotiations, resulting in a guilty plea to an unrelated and far less serious crime. There was further testimony the defendant did not intend to harm the children, but instead "he was comforting the children when he was hugging them."

The Court of Appeals for New York reversed the appellate court's decision. It agreed with the insurer, that an act of child molestation creates an exceptional case where the cause and effect cannot be separated. The court stated, "[w]e think the argument finds support and logic in the generally accepted conception of harm as being inherent in the act of sexually abusing a child.... To accept defendant's proposition would be abhorrent to the legislative policy reflecting the heightened awareness of the serious consequences of child sexual abuse, the need for preventive measures and the public perception that molesting a child without causing harm is virtually impossible." The court further indicated that to transfer the responsibility for a child molester's deeds onto the shoulders of other homeowners, in the form of higher premiums, would startle the ordinary person. The court was unpersuaded by the suggestion the defendant's actions should be viewed as less injurious because his motives were allegedly benign and his actions assertively undertaken out of a desire to comfort the children.

The court ultimately held that harm to the children was inherent in the nature of the acts alleged and whatever injuries resulted were, as a matter of law, intentionally caused within the meaning of the policy exclusion. The court further held the insurer did not have to provide the defendant with a defense, because the allegations of the complaint fell solely within the policy's exclusion.

The following states, alphabetically listed, have also ruled this issue:

*Allstate Ins. Co. v. Roelfs,* 698 F.Supp. 815 (D.Alaska 1987). (Holding the Alaska Supreme Court would follow the line of cases which hold an intent to injure can be inferred from the nature of the act, in this case sexual assault, as a matter of law, and the insurer has no duty to defend or indemnify the defendant/insured against those types of claims.); *Twin City Fire Ins. Co. v. Doe,* 163 Ariz. 388, 788 P.2d 121 (App. 1989). (Holding in the case of child molestation, an intent to harm can be inferred from the act itself, and the insurance policy exclusion applies.); *CNA Ins. Co. v. McGinnis,* 282 Ark. 90, 666 S.W.2d 689 (1984). (Reversing the Court of Appeals and holding an intent to injure can be inferred from an act that is certain to cause a particular kind of harm, regardless of the person's statement to the contrary, and the test is what a plain and ordinary person would expect. Injury is an intended result from a mature man deliberately debauching his six-year old stepdaughter and continuing to do so for years.); *Allstate Ins. Co. v. Troelstrup,* 789 P.2d 415 (Colo.1990). (There was testimony the molester had no conscious intent to produce bodily harm or emotional injury. The Colorado Supreme Court held child molestation is inherently harmful, making consideration of the insured's subjective intent irrelevant. An intent to injure may be inferred as a matter of law where a child molestation is involved.); *Motley v. Maddox,* 1992 WL 52206 (Del. February 19, 1992). (The policy had a specific provision excluding coverage for bodily injury arising out of sexual molestation. The court declared the public policy of Delaware did not require an insurer to provide coverage to day care centers for acts of sexual molestation.); *Landis v. Allstate Ins. Co.,* 546 So.2d 1051 (Fla.1989). (The Supreme Court of Florida, agreeing with the lower court's dissenting opinion,

found an intent to injure can be inferred as a matter of law in a case of child molestation and whether one of the defendant's diminished mental capacity prevented her from forming any specific intent to harm was irrelevant.); *Allstate Ins. Co. v. Jarvis*, 195 Ga.App. 335, 393 S.E.2d 489 (1990). The Court of Appeals held, in accordance with the Georgia Supreme Court in an earlier case, that the offense of child molestation carries with it a presumption of intent to inflict injury, which is not rebutted by an insured's own self-serving testimony. While the issue of whether a psychologist's testimony may rebut the presumption of intent to harm was of first impression in Georgia, the relevant case law in other jurisdictions, when applied to the public policy stated in the earlier Georgia Supreme Court case, led to the conclusion coverage is not available to a child molester.); *Scudder v. Hanover Ins. Co.*, 201 Ill.App.3d 921, 147 Ill.Dec. 386, 559 N.E.2d 559 (1990). (The court agreed with the vast majority of other jurisdictions that intent to injure can be inferred as a matter of law from the sexual molestation of a minor, and emotional harm can be inferred even when the abuse was non-violent); *Wiseman v. Leming*, 574 N.E.2d 327 (Ind. App.1991). (A psychologist testified the defendant had no intent to injure or harm the victim. The Court of Appeals held acts of child molestation are inherently harmful to the victim due to the heinous nature of the crime. Harm can be inferred and the subjective intent of the defendant is irrelevant.); *Altena v. United Fire & Casualty Co.*, 422 N.W.2d 485 (Iowa 1988). (The Supreme Court of Iowa held the majority view in other jurisdictions is an intent to injure may be inferred from the nature of the act and the accompanying reasonable foreseeability of harm. The court's own sense of propriety dictates coverage for these types of criminal acts should be against the public policy of Iowa and the trial court did not err in holding, in the case of sexual assault, intent to injure may be inferred as a matter of law.); *Doe v. Smith*, 573 So.2d 238 (La.App.1990). (The Court of Appeals agreed with the trial court in finding a reasonable person would expect psychological damage to a minor from sexual molestation, and in any case, child molestation is an instance where a factual determination of actual intent is unnecessary, because an intent to injure can be inferred as a matter of law.); *Perreault v. Maine Bonding & Casualty Co.*, 568 A.2d 1100 (Me.1990). (The defendant claimed he did not subjectively intend to injure the minor. The Supreme Court of Maine held as a matter of law, any injury produced by a criminal act of sexual abuse against a child is expected or intended by the insured within the meaning of the homeowner's exclusion and coverage for criminal sexual abuse of children is undoubtedly outside the contemplation of the parties to the insurance contract.); *Harpy v. Nationwide Mut. Fire Ins. Co.*, 76 Md. App. 474, 545 A.2d 718 (1988). (The defendant contended his subjective lack of intent to harm created at least a triable issue of fact. The Court of Appeals held that Maryland follows the nearly unanimous opinion of courts in other jurisdictions, that an intent to injure can be inferred as a matter of law from the sexual abuse of a child, regardless of the subjective intent and feelings of the adult aggressor.); *Worcester Ins. Co. v. Fells Acres Day School, Inc.*, 408 Mass. 393, 558 N.E.2d 958 (1990). (The defendants produced a psychiatrist who was prepared to testify that a child abuser acts from a variety of motives, and it is a question of fact whether these particular individuals intended to injure the children. The court concluded as a matter of law, the insured's intended to cause at least some injury to the children; *State Mut. Ins. Co. v. Russell*, 185 Mich.App. 521, 462 N.W.2d 785 (1990). (The Court of Appeals found the express language of the insurance policy required use of a subjective test (instead of the objective test applied by the trial court) in determining whether the defendant intended to injure the child. However, since the court had previously ruled on several occasions, in a case of the sexual molestation of a child, that an intent to injure can be inferred as a matter of law, the subjective standard would not preclude an inference this particular defendant intended injury.); *New Hampshire Ins.*

*Group v. Strecker,* 244 Mont. 478, 798 P.2d 130 (1990). (The plaintiff appealed contending there was a factual question regarding the defendant's subjective intent to cause harm. The Supreme Court of Montana held that in light of the facts of the case it would fly in the face of reason to find the defendant did not intend to harm the child by continuing his course of conduct, and because his misconduct was clearly intentional, the subjective intent was irrelevant.); *State Farm Fire and Casualty Co. v. VanGorder,* 235 Neb. 355, 455 N.W.2d 543 (1990). (The Supreme Court joined other jurisdictions in holding, regardless of the actor's subjective intent, an intent to inflict injury can be inferred as a matter of law in cases of sexual abuse and the insurer has no obligation to defend any civil suit or pay damages as a result of a child molester's intentional acts.); *State Farm Fire & Casualty Co. v. Smith,* 907 F.2d 900 (9th Cir.1990) (Nev.). (The 9th Circuit affirmed the lower court's decision that Nevada's statutory law recognizes harm from the sexual molestation of a minor is inevitable and therefore, makes it illegal. The court decided Nevada's Supreme Court would join the vast majority of jurisdictions which hold an intent to harm may be inferred from sexual contact with a minor as a matter of law.); *Vermont Mutual Insurance Company v. Malcolm,* 517 A.2d 800 (N.H.1986). (The court stated the assaults were inherently injurious in the most obvious sense, because they could not be performed upon a boy without appalling effects on his mind as well as forbidden contacts with his body. Defendant's claim he did not actually intend to inflict the particular psychological injury was irrelevant.); *Atlantic Employers Ins. Co. v. Tots & Toddlers Pre–School Day Care Center, Inc.,* 239 N.J.Super. 276, 571 A.2d 300 (1990). (The defendants relied heavily on the testimony of a psychiatrist who claimed the child molester was a pedophile who did not necessarily intend to cause the children any injury. The appellate court held, while there are no New Jersey cases directly on point, the rule in other jurisdictions and adopted hereby, is an intent to cause injury can be inferred as

a matter of law when a foster custodial adult engages in sexual activity with a child.); *Allstate Ins. Co. v. Thomas,* 684 F.Supp. 1056 (W.D.Okla.1988). (The United States District Court granted the insurer's motion for summary judgment, acknowledging that the application of the exclusion to child molestation was one of first impression in Oklahoma. However, given the legislature's particular concern about this type of crime, Oklahoma would infer an intent to harm a child, where an adult intentionally commits an act of sexual abuse.); *Mutual of Enumclaw v. Merrill,* 102 Or.App. 408, 794 P.2d 818 (1990). (The defendant contended he did not subjectively intend to injure the girl, but the Court of Appeals held there are some intentional acts, the nature of which is such, that it must necessarily be concluded there was an intent to injure. The fact a child molester does not subjectively intend the specific injuries the defendant sustained, or any injuries, does not matter, because injurious intent is necessarily inferred from this type of intentional conduct.); *Foremost Ins. Co. v. Weetman,* 726 F.Supp. 618 (W.D.Pa. 1989). (The United States District Court noted Pennsylvania courts had not addressed the issue of whether an intent to injure can be inferred as a matter of law from the sexual molestation of a child. However, the court stated, "[W]e concluded that one who manipulates children for his own sexual gratification intends any resulting injuries, as a matter of law."); *Public Employees American Family Mutual Ins. Co. v. Purdy,* 483 N.W.2d 197 (S.D.1992). (The defendant offered the testimony of a psychologist to dispute an allegation of intent, because of his narcissistic or self-centered personality. The court held acts of criminal sexual contact are of such a nature the intent to injure will be inferred as a matter of law.); *Public Employees Mutual Ins. Co. v. Rash,* 48 Wash. App. 701, 740 P.2d 370 (1987). (The defendant was convicted of first degree statutory rape and was committed to a mental hospital for treatment as a sexual psychopath. In the civil action, the plaintiff contended the child molester was not capable of forming an intent to injure because of his mental illness. The appellate court held an intent to injure can be inferred in sex

abuse cases, because the subjective intent of the insured is irrelevant. Therefore, it logically follows, it is likewise irrelevant if the insured is incapable of forming the intent to injure.); *Dotts v. Taressa J.A.,* 182 W.Va. 586, 390 S.E.2d 568 (1990). (The Supreme Court reversed the lower court and held, with respect to sexual misconduct, an intent to injure would be inferred as a matter of law.); *N.N. v. Moraine Mutual Ins. Co.,* 153 Wis.2d 84, 450 N.W.2d 445 (1990). (The defendant was drunk when he sexually assaulted the minor and the Court of Appeals held, there was plausible evidence the molester was so drunk he could not form the requisite intent to injure. The Supreme Court reversed, holding Wisconsin approves the majority view, that an intent to injure can be inferred as a matter of law from the sexual molestation of a child and the defense of diminished capacity due to intoxication is inapplicable under these circumstances.)[2]

I have found only one jurisdiction, a federal district court in Alabama, which applied a subjective test of the defendant's intent to injure and forced the insurer to defend the claim. *See State Auto Mutual Ins. Co. v. McIntyre,* 652 F.Supp. 1177 (N.D.Ala.1987). This case has been criticized in *Whitt v. De Leu,* 707 F.Supp. 1011, 1015 (W.D.Wis.1989) and *Roelfs,* 698 F.Supp. at 821. The only other jurisdiction applying a subjective test appears to be Michigan, but that court still denied coverage and found an intent to injure could be inferred as a matter of law. *See above Russell,* 462 N.W.2d 785.

Interestingly, these cases have all arisen within the past few years. The twenty-six state courts and four federal courts interpreting what they believe would be the law of the state, have concluded the molester's intent is not an issue. These cases reason with monotonous repetition that the molester's subjective intent is not to be determined, because the acts of sexual assault on a minor are inherently harmful. Harm is inferred as a matter of law. This result has been reached where psychiatric testimony has diagnosed the molester as a pedophile who did not necessarily intend to

cause injury; where the molester did not intend the specific injuries that resulted, or any injuries at all; where the molester had a mental illness rendering him incapable of forming an intent; and where he was so drunk he could not form an intent.

As stated above, only one federal district court in Alabama has found the molester's subjective intent to be relevant. The majority of this court has gone a step further when it concludes the cause and effect must include the specific injury actually resulting. The majority's ruling is tantamount to a finding of insurance coverage in the absence of proof that the acts of misconduct resulted in the specific harm intended.

The mainstream of judicial reasoning, finding an intent to injure as a matter of law in child molestation cases, is overwhelmingly slanted because it reflects a rational and logical public policy to an unfortunate and all-too-frequent occurrence in our society today.

I agree that the judgment of the trial court should be affirmed, but I believe it should be for the reasons given here.

---

**2.** Credit must be duly given to Risjord, *Liability Insurance Cases,* as a great number of these cases were found in volumes 13 through 17, Chapter 34 of that work.