**B.B.,[*] Appellant,**

v.

**CONTINENTAL INSURANCE COMPANY, Appellee.**

**No. 93–1660.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1993.

Decided Nov. 4, 1993.

---

* Pursuant to 18 U.S.C.A. § 3509(d), we have replaced the names of the minors involved in the facts of this case with their initials.

Greggory D. Groves, Springfield, MO, argued (F. William Joyner and Greggory D. Groves, on the brief), for appellant.

James J. Cramer, Overland Park, KS, argued (Barry W. McCormick and James J. Cramer, on the brief), for appellee.

Before MAGILL, Circuit Judge, LAY, Senior Circuit Judge, and HANSEN, Circuit Judge.

MAGILL, Circuit Judge.

B.B. appeals the district court's [1] order granting summary judgment to Continental Insurance Company (Continental) and denying B.B.'s motion for summary judgment. B.B. contends that the district court mistakenly concluded that the sexual molestation of B.B. by P.F. was not an "accident" and therefore not an "occurrence" covered by P.F.'s parents' homeowner's insurance policy. B.B. argues that the molestation was an "occurrence" because the injuries resulting from the molestation were "neither intended nor expected" from the standpoint of P.F. Because we believe that the Missouri Supreme Court would join the now unanimous rule of over thirty states that have considered this issue and adopt the inferred-intent standard in cases of sexual molestation of a minor, we affirm the district court.

---

1. The Honorable Scott O. Wright, Senior Judge, United States District Court for the Western District of Missouri.

## I. BACKGROUND

The facts that give rise to this dispute occurred from 1979 through 1981 when B.B., a male minor, was eight and nine years of age. B.B.'s parents periodically enlisted the aid of P.F., also a male minor, who was fourteen and fifteen years of age at the time, to babysit B.B. While babysitting B.B., P.F. sexually molested him by performing fellatio on B.B. and causing B.B. to perform fellatio on P.F.

After B.B. reached the age of majority, he filed suit against P.F. in the Circuit Court of Howell County, Missouri. The Howell County litigation proceeded to trial, and that court, serving as trier of fact, rendered judgment in favor of B.B. against P.F. in the amount of $125,000 plus costs.

At the time of the sexual molestation, Continental insured P.F.'s parents under a homeowner's insurance policy. Because P.F. was a member of his parents' household at all times when the sexual molestation occurred, the Continental policy also covered P.F. B.B. claims that the Continental policy insures P.F. for the damage he caused to B.B. After receiving judgment against P.F., B.B. brought this present lawsuit as a judgment creditor against P.F.'s insurer, Continental. *See* Mo.Rev.Stat. § 379.200 (1986).

Continental removed this case to the United States District Court for the Western District of Missouri on the basis of diversity of citizenship. Both B.B. and Continental filed motions for summary judgment in the district court. B.B. argued that P.F.'s acts of sexual molestation were "occurrences" as defined in the Continental policy, and therefore the Continental policy insured P.F. for the damage caused by these "occurrences." Continental argued that under its policy, the term "occurrence" did not include coverage for intentional acts of sexual molestation. The district court granted Continental's motion for summary judgment and denied B.B.'s motion for summary judgment. The district court held that the Continental policy did not cover the damage that resulted from acts of sexual molestation by an insured because the insurance policy only provided coverage for occurrences that were "accidents." The district court stated that P.F.'s conduct was intentional and therefore could not qualify as an accident. B.B. now appeals the district court's decision.

## II. DISCUSSION

■ The sole issue on appeal is whether P.F.'s acts of sexual molestation constitute "occurrences" covered under the Continental policy. The Continental policy states in pertinent part:

Section II—LIABILITY.

A. LIABILITY TO OTHERS.

The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of *bodily injury* or *property damage*, to which Section II applies caused by an *occurrence.* (emphasis in original).

The policy defines the underlined word "occurrence" in a separate definition section:

"occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended from the standpoint of the insured.* (emphasis added).

This underlined language in the definition of occurrence controls the issues in this case.

B.B. argues that the Missouri Supreme Court, applying Missouri law, has interpreted the "intended or expected" language of homeowners' insurance policies to exclude coverage when the insurer demonstrates "not only that the insured intended the acts causing the injury, but that injury was intended or expected from these acts." *American Family Mut. Ins. Co. v. Pacchetti,* 808 S.W.2d 369, 371 (Mo.1991). B.B. argues that in order for Continental to deny coverage, it must demonstrate that (1) P.F. intended to sexually molest B.B., and (2) P.F. subjectively intended to harm or injure B.B. *See id.* B.B. further argues that Continental cannot meet this burden, as a matter of law, because the state court in the underlying action between B.B. and P.F. made findings of fact that B.B. claims are binding on Continental. The court found that although P.F. intentionally molested B.B., he subjectively did not

intend to injure or harm B.B.[2] Appellant's Br. at 13. B.B. concludes that under Missouri law the sexual molestation by P.F. was an "occurrence" covered by the Continental policy. Appellant's Br. at 16.

█ Our task is to determine how the Missouri Supreme Court would interpret the "neither intended nor expected" language of Continental's insurance policy in the context of the sexual molestation of a minor. Specifically, we must determine whether the Missouri Supreme Court would adopt the inferred-intent standard in cases of sexual molestation of a minor to impute an intent to harm or cause injury regardless of the actor's actual subjective intent.

## A. Standard of Review

In this case we review both the grant and denial of summary judgment by the district court. Summary judgment is proper "if there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We review the district court's summary judgment determinations under the de novo standard. *First S. Ins. Co. v. Jim Lynch Enter.*, 932 F.2d 717, 719 (8th Cir. 1991). Moreover, we can affirm the district court "regardless of an incorrect analysis if the same result may be reached on theories other than those employed by the trial court." *Kuehn v. Garcia*, 608 F.2d 1143, 1146 (8th Cir.1979), *cert. denied*, 445 U.S. 943, 100 S.Ct. 1340, 63 L.Ed.2d 777 (1980).[3]

## B. Missouri Law

█ Both parties correctly point out that Missouri law governs the substantive issues in this case because jurisdiction is based on diversity of citizenship. This court must apply the substantive law of Missouri, the forum in which the district court sits. *See Omaha Indem. Co. v. Royal Am. Managers, Inc.*, 755 F.Supp. 1451, 1459 (W.D.Mo. 1991). The decisions of the Missouri Supreme Court as to state law are binding on this court. *See Garnac Grain Co. v. Blackley*, 932 F.2d 1563, 1570 (8th Cir.1991). If the Missouri Supreme Court has not addressed the issue before this court, we "must determine what the highest state court would probably hold were it called upon to decide the issue." *Gilstrap v. Amtrak*, 998 F.2d 559, 560 (8th Cir.1993). "In making this determination, a federal court may consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue." *Id.* (internal quotes omitted). Decisions of Missouri's intermediate appellate courts are not binding on this court, but they are persuasive authority, and this court must follow them when they are the best evidence of Missouri law. *Aetna Casualty & Sur. Co. v. General Dynamics Corp.*, 968 F.2d 707, 712–13 (8th Cir.1992).

## 1. Missouri Supreme Court

The Missouri Supreme Court has held that in order for an insurer to deny coverage under an exclusion for actions "intended or expected" by the insured, the insurer must demonstrate both that the insured acted intentionally and that the insured subjectively intended to harm or cause injury. *Pacchetti*, 808 S.W.2d at 371. B.B. argues that *Pacchetti* controls the inquiry in this case.[4] We disagree.

---

2. The Howell County Court made the following findings:

5. That such conduct was intentional on the part of [P.F.] and constituted a battery on the person of [B.B.].
6. That [P.F.] was of the age of 14 and 15 years when these events occurred, and [P.F.] lacked the maturity to appreciate or expect that his actions could cause [B.B.] to experience emotional problems subsequent to the events herein described.
7. That [P.F.] did not intend to cause [B.B.] emotional or physical harm....

*B.B. v. P.F.*, No. CV391–122CC, at 1–2 (Howell County Cir. Ct. Sept. 17, 1991).

3. Although the district court granted summary judgment based on its interpretation of the term "accident," Continental argues that application of the "neither intended nor expected" clause is the most compelling argument for affirmance.

4. Both parties argue that the other party has the burden of proof. B.B. characterizes the "neither intended nor expected" language as an exclusion for which Continental has the burden of proof. Continental characterizes the same language not

In *American Family Mutual Insurance v. Pacchetti,* the Missouri Supreme Court, in a general liability insurance case, determined that the subjective intent of the insured governs whether the insured intended to harm or cause injury. *Id.* at 371. In *Pacchetti,* an insured minor provided Pacchetti with cocaine. *Id.*[5] Pacchetti died from an overdose of the cocaine, and his parents brought a wrongful death action against the insured. *Id.* The Missouri Supreme Court held that a homeowner's insurance policy that excluded coverage for acts "expected or intended by the insured" did not bar coverage because the issue of whether the insured "expected or intended" injury was a question of fact that had been resolved by the trial court. *Id.* at 371–72. The *Pacchetti* court rejected arguments that the insurer could demonstrate intent to harm simply because cocaine was an inherently harmful substance. *Id.* The court concluded that the evidence supported the trial court's finding that the insured did not intend to harm Pacchetti. *Id.* at 372.

In the context of general liability insurance cases, the subjective standard adopted by the *Pacchetti* court is not uncommon among other state courts. *See. Wiley v. State Farm Fire & Casualty Co.,* 995 F.2d 457, 461 (3d Cir.1993). In the context of sexual molestation of a minor, however, the states that have considered the issue unanimously have rejected the subjective-intent standard when determining intent to harm or cause injury. *See State Farm Fire & Casualty Co. v. Davis,* 612 So.2d 458, 464 (Ala.1993); *see also Wiley,* 995 F.2d at 461. Many states have adopted the inferred-intent standard in cases of sexual molestation although they retain the subjective-intent standard for all other

cases. *See id.* at 464; *see also Horace Mann Ins. Co. v. Fore,* 785 F.Supp. 947, 955 (M.D.Ala.1992); *Allstate Ins. Co. v. Roelfs,* 698 F.Supp. 815, 820 n. 5 (D.Alaska 1987).[6] Further, one Missouri appellate judge has stated specifically that "Missouri has not addressed the problem of an insured's intention in the context of sexual abuse of a minor." *Mid–Century Ins. Co. v. L.D.G.,* 835 S.W.2d 436, 439 (Mo.Ct.App.1992) (Hanna, P.J., concurring in part and concurring in result).

Because the Missouri Supreme Court has only applied the subjective-intent standard in the context of a general insurance liability case unrelated to sexual abuse and because many other state jurisdictions have adopted the inferred-intent standard in cases of sexual molestation of a minor even though they apply the subjective-intent standard generally, we conclude that the Missouri Supreme Court has not decided the issue of which intent standard to apply in cases of sexual molestation of a minor. Therefore, we must look to other sources to determine how the Missouri Supreme Court would decide this issue. *See Gilstrap,* 998 F.2d at 560.

2. **Decisions From Other Jurisdictions Reflecting Missouri Policy**

In analyzing whether Missouri would adopt the inferred-intent standard in the case of sexual molestation of a minor, we benefit from the experience of the many other jurisdictions that have struggled with this problem. Courts initially adopted one of three approaches for determining whether an insured intended to injure or cause harm and thus whether the insurer was liable for dam-

as an exclusion, but as an insuring clause, for which the insured bears the burden of proof. We need not decide and therefore state no opinion as to this issue.

5. In *Pacchetti,* the insured either injected the cocaine into Pacchetti's arm, assisted Pacchetti in injecting the cocaine, or furnished Pacchetti with the cocaine knowing that he proposed to inject it. *Id.* at 370.

6. The analysis of *Horace Mann Insurance Co. v. Fore* is particularly relevant. The *Horace Mann* court rejected application of Alabama's subjective-intent standard to cases of sexual molestation of a minor. The court distinguished an

Alabama Supreme Court case that applied the subjective-intent standard to a case in which the insured discharged a gun. *Id.* at 951. The *Horace Mann* court argued that there was a distinction between damage resulting from intentional acts utilizing an external implement and acts in which the damage is caused by the body of the insured. *Id.* at 951–52. The court held that Alabama would adopt the inferred-intent standard in cases of sexual molestation of a minor. *Id.* at 956. The Alabama Supreme Court has since approved the *Horace Mann* court's analysis and adopted the inferred-intent standard in cases of sexual molestation of a minor. *State Farm Fire & Casualty Co.,* 612 So.2d at 464.

ages in a particular case. *Wiley*, 995 F.2d at 462.

> The first of these is the [subjective] approach, which seeks the insured's actual, subjective intent to cause injury. The second is the objective test, which inquires whether a reasonable person would have foreseen that his action would cause harm. The third approach, and that taken by the vast majority of courts that have considered the issue, is the inference test, by which intent to harm is inferred from the nature of the act of sexual molestation or abuse regardless of the standard that governs other types of cases.

*Horace Mann Ins. Co.*, 785 F.Supp. at 952. The inference or inferred-intent standard in cases of sexual molestation is now the unanimous rule[7] among jurisdictions that have considered the issue.[8]

The rationale behind the inferred-intent standard is based on the inherently harmful nature of child molestation. *See, e.g., Wiley*, 995 F.2d at 463. Courts have stated that " '[a]cts of sexual molestation against a minor are so certain to result in injury to that minor that the law will infer an intent to injure on behalf of the actor without regard to his ... claimed intent.' " *Id.* at 462 (alteration in original) (quoting *K.A.G. v. Stanford*, 148 Wis.2d 158, 434 N.W.2d 790, 792–93 (Ct. App.1988)). The New York Court of Appeals, in *Allstate Insurance Co. v. Mugavero*, agreed with Allstate's argument that "in the exceptional case of an act of child molestation, cause and effect cannot be separated; that to do the act is necessarily to do the harm which is its consequence; and that since unquestionably the act is intended, so also is the harm." 79 N.Y.2d 153, 581 N.Y.S.2d 142, 146, 589 N.E.2d 365, 369

(1992). The California Supreme Court has reasoned that "[t]he very essence of child molestation is the gratification of sexual desire. The act is the harm. There cannot be one without the other. Thus the intent to molest is, by itself, the same thing as intent to harm." *J.C. Penney Casualty Ins. Co. v. M.K.*, 52 Cal.3d 1009, 278 Cal.Rptr. 64, 70, 804 P.2d 689, 695 (1991). A federal district court applying Wisconsin law echoed these observations stating:

> The [inferred-intent] approach ... stands for the proposition that a person who sexually manipulates a minor cannot expect his insurer to cover his misconduct and cannot obtain such coverage simply by saying that he did not mean any harm. The courts following the majority approach have concluded that sexual misconduct with a minor is objectively so substantially certain to result in harm to the minor victim, that the perpetrator cannot be allowed to escape society's determination that he or she is expected to know that. Hence, these courts infer the intent to harm as a matter of law in sexual misconduct liability insurance cases involving minors.

*Whitt v. Deleu*, 707 F.Supp. 1011, 1016 (W.D.Wis.1989).

We find the analyses of these courts consistent with and reflective of the public policy of Missouri with respect to sexual molestation of children. Under Missouri law, the crime of deviate sexual intercourse with a person less than fourteen years of age requires no proof of intent on the part of the perpetrator. *State v. Beishir*, 646 S.W.2d 74, 79 (Mo.1983) ("[T]he crime of deviate sexual intercourse with a child under fourteen years of age ... is a crime of strict liability.").[9]

---

**7.** The five states that initially adopted the subjective-intent standard with respect to cases of sexual molestation of a minor all have now adopted the majority approach of inferring intent as a matter of law. *State Farm Fire & Casualty Co.*, 612 So.2d at 464 & n. 5 (collecting cases and adopting inferred-intent standard).

**8.** The courts in the following 34 states have adopted the majority approach: Alabama, Alaska (federal diversity prediction), Arizona, Arkansas, California, Colorado, Delaware, Florida, Georgia, Illinois, Indiana, Iowa, Kansas (federal diversity prediction), Kentucky, Maine, Maryland,

Massachusetts, Michigan, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico (federal diversity prediction), New York, Ohio, Oklahoma (federal diversity prediction), Oregon, Pennsylvania (federal diversity prediction), South Dakota, Washington, West Virginia, and Wisconsin. *See Wiley*, 995 F.2d at 461 n. 5 (collecting cases); *State Farm Fire & Casualty Co.*, 612 So.2d at 463–64 & nn. 4–5 (same).

**9.** "A person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married who is less than

Thus, the Missouri legislature and the Missouri Supreme Court recognize that sexual molestation of a child is a crime for which the subjective intent of the perpetrator is irrelevant. *See* Mo.Rev.Stat. § 566.010; *Beishir,* 646 S.W.2d at 79. The actor is guilty of the crime merely by proof that the action occurred, irrespective of whether the actor intended the resultant injuries. We conclude that the public policy of Missouri, reflected in its statutes and case law involving sexual molestation of a minor, convincingly supports a finding that Missouri would adopt the inferred-intent standard in cases of sexual molestation of a minor.

### 3. Missouri Appellate Decisions

B.B. argues that even if *Pacchetti* does not control our inquiry, a Missouri appellate court has indicated that Missouri would reject the inferred-intent standard in the context of sexual molestation of a minor. *See Mid–Century Ins. Co.,* 835 S.W.2d at 437. In *Mid–Century,* a panel divided in its reasoning held that an insured was not covered by his homeowner's policy for the damage he caused by transmitting a venereal disease to a two-year-old girl who he had raped. *Id.* at 438. Because the Mid–Century homeowner's policy also specifically denied coverage for bodily injury that was "reasonably foreseeable," the appellate court held that as a matter of law transmission of a venereal disease was a reasonably foreseeable result of rape, and therefore the policy did not provide coverage. *Id.* at 437. In dicta, the majority reasoned that under *Pacchetti* the insurer must demonstrate that the insured intended not only to harm the two-year-old girl, but that the insured intended the "specific" harm that resulted, transmission of a venereal disease. *Id.* at 437.

The concurrence in *Mid–Century* attacked the majority's dicta on two grounds. First, Judge Hanna argued that *Pacchetti* did not require the insurer to demonstrate that the insured subjectively intended a "specific" harm or injury. *Id.* at 438 (Hanna, P.J., concurring in part and concurring in result).

Second, Judge Hanna argued that in the specific context of sexual abuse of a minor that the court should infer intent to harm as a matter of law and that the subjective intent of the insured should be irrelevant. *Id.* at 438–39. In *Easley v. American Family Insurance Co.,* an expanded panel of appellate judges adopted one of Judge Hanna's criticisms and implicitly rejected the *Mid–Century* majority's statement that the insurer must demonstrate the insured's subjective intent to cause a "specific" harm. *See* 847 S.W.2d 811, 812–13 (Mo.Ct.App.1992).

Although decisions of Missouri's intermediate appellate courts do not bind this court, the decisions are persuasive authority, and this court must follow them when they are the best evidence of what the Missouri Supreme Court would decide. *See Aetna Casualty & Sur. Co.,* 968 F.2d at 712–13. This court, however, has rejected intermediate appellate authority when convinced that the decisions were not the best evidence of the state's law. *Id.* (rejecting state intermediate appellate decisions in favor of prior federal appellate decision). We find that the dictum in *Mid–Century* that implicitly rejects the inferred-intent rule in cases of sexual molestation of a minor is not the best evidence of what the law of Missouri is. *See id.* First, we find that the reasoning underlying the unanimous consensus of other state jurisdictions that have adopted the inferred-intent standard in cases of sexual molestation of a minor is consistent with and better reflects Missouri public policy regarding sexual molestation of minors. *See supra* part II.B.2. Second, the statements by the *Mid–Century* majority are merely dicta that had no bearing on the resolution of the underlying case. 835 S.W.2d at 437. Third, another Missouri appellate court already has rejected one of *Mid–Century*'s interpretations of the subjective-intent standard of *Pacchetti,* thereby weakening its persuasive force. *See Easley,* 847 S.W.2d at 812–13. Finally, the adoption of the inferred-intent standard is not inconsistent with the result reached in *Mid–Century. See Aetna Casualty & Sur. Co.,* 968 F.2d at 713. We therefore hold that the

---

fourteen years old." Mo.Rev.Stat. § 566.060 (1986). Missouri defines deviate sexual intercourse as "any sexual act involving the genitals

of one person and the mouth, tongue, hand, or anus of another person." *Id.* § 566.010(2).

dictum applying the subjective-intent standard to sexual molestation of a minor in *Mid–Century* is not the best evidence of what the Missouri Supreme Court would decide if faced with this issue. *See id.* at 712–13.[10]

### 4. Public Policy

We also believe that sound public policy supports our prediction that Missouri would adopt the inferred-intent standard in this case. "[T]he desire to place moral liability with the same precision with which we would place economic liability gives force to the [subjective-intent standard]." *Horace Mann Ins. Co.* 785 F.Supp. at 955. Forcing the insurer to indemnify the insured "subsidizes the episodes of sexual abuse of which its victims complain, at the ultimate expense of other insureds to whom the added costs of indemnifying child molesters will be passed." *Id.* at 956. "[T]he average person purchasing homeowner's insurance would cringe at the very suggestion that he was paying for [coverage for liability arising out of his sexual abuse of a child]. And certainly he would not want to share that type of risk with other homeowner's policy holders." *Wiley*, 995 F.2d at 464 (internal quotes omitted) (second alteration in original). We are aware that application of the inferred-intent standard will deny B.B. another source of compensation for his injuries, *see id.*, but we agree with other courts that have determined that the benefit of ensuring compensation of the victim " 'is outweighed by the effect of allowing sexual offenders to escape having to compensate minors for the harm that the courts have established is inherent in such offenses.' " *Horace Mann Ins. Co.*, 785 F.Supp. at 955 (quoting *Whitt,* 707 F.Supp. at 1016).

### 5. Specific Policy Language and Incapacity Based on Age

B.B. also argues that two other factors militate against adoption of a rule of inferred

intent under these circumstances. First, B.B. argues that the specific language in Continental's policy requires a finding of subjective intent to harm, and second, that the inferred-intent rule is improper as applied to an insured who is a minor because the insured is incapable of forming the intent to harm. We reject both arguments.

■ The Continental policy provides coverage for "*bodily injury* or *property damage* neither expected nor intended from the standpoint of the insured." We do not find any appreciable difference between the language in Continental's policy that provides insurance for damage resulting from acts "neither intended nor expected from the standpoint of the insured" and language in other policies that excludes coverage "expected or intended by the insured." *See Horace Mann Ins. Co.*, 785 F.Supp. at 949. Both convey the importance of a determination of subjective intent of the insured. The language of the policy, however, is only "relevant to the question of whether an objective or subjective intent to injure is required by the particular exclusion." *Allstate Ins. Co.*, 698 F.Supp. at 821 n. 7. However, "[w]hen the intent to injure is inferred as a matter of law from the nature of the acts committed, the subjective ... intent of the insured to cause injury is irrelevant." *Id.* Because we have held that Missouri would impute intent to harm or injure to the insured in cases of sexual molestation of a minor based on the nature of the act, and not the intent of the actor, the language of the policy is irrelevant to the issue of the intent of the insured. If an insured sexually molests a minor, the inferred-intent standard establishes that, as a matter of law, the insured did intend to injure or harm the minor.

■ For the same reason we reject B.B.'s argument that P.F.'s status as a minor

---

10. In predicting what standard the Alabama Supreme Court would adopt in cases of sexual molestation, a federal district court rejected the analysis of another Alabama federal court and stated:

    Alabama would follow the inferred-intent rule, joining virtually every court in the nation that has considered the issue.... [B]ecause th[is]

court does not believe that the Alabama Supreme Court is a judicial pariah, it believes that Alabama would make the same sensible determination that other courts have made without abandoning its subjective-intent rule for other types of cases.

*Horace Mann Ins. Co.*, 785 F.Supp. at 956.

**1296**

should limit application of the inferred-intent standard. *See Allstate Ins. Co. v. Jack S,* 709 F.Supp. 963, 966 (D.Nev.1989) (rejecting inferred-intent rule when molester is a fourteen-year-old minor). *But see Rivera v. Nevada Medical Liab. Ins. Co.,* 107 Nev. 450, 814 P.2d 71, 73 (1991) (adopting inferred-intent standard in context of "violent" rape of an adult). The basis for our holding that Missouri would adopt the inferred-intent standard in cases of sexual molestation of a minor is anchored in Missouri's policy that sexual contact with a minor is an inherently harmful act. Because this rationale is dependent on the act, and not on the actor, we hold that evidence of incapacity based on the age of the insured has no bearing on the application of the inferred-intent standard. *See Allstate Ins. Co. v. Roelfs,* 698 F.Supp. at 820 & n. 6 (applying inferred-intent standard to sixteen-year-old boy despite age); *Illinois Farmers Ins. Co. v. Judith G.,* 379 N.W.2d 638, 642 (Minn.Ct.App.1986) (applying inferred-intent standard to fourteen-year-old boy despite age).

### C. Application of Standard

Application of the inferred-intent standard to the facts of this case resolves all genuine issues of material fact. P.F. intentionally molested B.B. As a result, we infer as a matter of law that P.F. intended to harm or injure B.B. Because P.F. intended to sexually molest B.B. and, as a matter of law, intended to cause harm or injury, his acts of sexual molestation do not constitute "occurrences" that were "neither expected nor intended from the standpoint of the insured." Therefore, as a matter of law, P.F. is not insured by Continental for the damage arising out of his sexual molestation of B.B. *See* Fed.R.Civ.P. 56(c). We therefore affirm the judgment of the district court on the ground that the damage to B.B. resulted from intentional acts of sexual molestation by P.F. that are not insured by Continental.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.