**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Respondent,**

**v.**

**Barbara FRANZ, Defendant,**

**and**

**Cellie Dudley, by and through her Guardian ad litem, Harrison Dudley, Appellant.**

**No. WD 54813.**

Missouri Court of Appeals,
Western District.

Sept. 15, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 27, 1998.

Application for Transfer Denied
Dec. 22, 1998.

Scott W. Turner, Kansas City, for Appellant.

Ben T. Schmitt, Kansas City, for Respondent.

Before HOWARD, P.J., and
BRECKENRIDGE and SPINDEN, JJ.

HOWARD, Presiding Judge.

American Family Mutual Insurance Company ("American Family") brought a declaratory judgment action, seeking a determination of whether the conduct of its insured, Barbara Franz, was covered by her homeowner's insurance policy. The trial court sustained American Family's motion for summary judgment, and Dudley now appeals, claiming that the trial court erred by finding there was no coverage because of an exclusionary clause in the policy.

Affirmed.

The facts of this case are relatively simple, and involve a dispute between neighbors. Franz and the Dudley family lived in the same apartment complex in Blue Springs, Missouri. Six-year-old Cellie Dudley and her parents would walk the family dog around the complex, and Franz became upset that the dog was defecating near her apartment.

On the morning of October 17, 1994, Cellie Dudley was walking the dog and Franz observed the dog defecating near her front door. Franz grabbed a can of hairspray, emerged from her apartment, and sprayed the dog. The dog ran away, and Franz told Cellie Dudley that she wanted the dog's feces cleaned up immediately. When Cellie ap-

peared to be resisting her demand, Franz grabbed her wrist and, by her own admission, intentionally pushed Cellie's hand into the feces.

Franz then attempted to pull Cellie in the direction of her apartment, but released her when the apartment complex's maintenance man observed the conflict and began shouting at her. Meanwhile, Cellie's mother, Leisa Dudley, heard her daughter's screams and saw some of the altercation from her apartment window. She hurried to her daughter's aid, but the incident was over by the time she got there.

Six months later, the Dudleys brought a civil action against Franz, alleging that she committed the torts of assault, battery, intentional infliction of emotional distress, and false imprisonment against Cellie Dudley, and that she committed the tort of negligent infliction of emotional distress against Cellie's mother, Leisa Dudley. American Family then filed its declaratory judgment action, claiming that Franz' actions were specifically excluded from her homeowner's insurance policy by a provision which stated that the policy's coverages for personal liability and medical expense "do not apply to bodily injury ... which is expected or intended by the insured."

The trial court granted declaratory relief to American Family, finding that Franz' actions were not covered by the policy. The trial court also found that Leisa Dudley did not have a claim for negligent infliction of emotional distress because she did not allege that she was in a zone of danger, and this latter finding is not challenged on appeal.

■ Dudley's sole point on appeal claims that the trial court erred by concluding that the policy exclusion barred coverage in this case. Dudley contends there was no showing that Franz intended for her conduct to injure the child.

In considering policy clauses like the one here, which excludes coverage for bodily injury "which is expected or intended by the insured," Missouri courts will find that coverage is barred by that specific language if it is shown that (1) the insured intended the acts causing the injury, and (2) injury was intend-

ed or expected from these acts. *American Family Mut. Ins. v. Pacchetti,* 808 S.W.2d 369, 371 (Mo. banc 1991). The burden is on the insurer to establish that an exclusion bars coverage. *American Family Mut. Ins. Co. v. Lacy,* 825 S.W.2d 306, 314 (Mo.App. W.D.1991).

Dudley does not dispute that Franz intended the act which is at issue here, namely, the pushing of the child's hand into dog droppings. Dudley does contend, however, that American Family failed to show that Franz intended the act to harm or injure the child, and therefore the second part of the *Pacchetti* test was not met. Dudley notes that the only direct evidence of Franz' intent is her deposition testimony, in which she states that her intent was "to make a point to the child" rather than to harm the child. According to Dudley, Franz' intent was to benefit the child by teaching her a lesson.

Courts in numerous jurisdictions have confronted exclusion clause cases such as this, where the insured claims that there was a benign intent behind a harmful act, but the nature of the act itself indicates otherwise. *See generally* Note, *Intentional Injury Exclusion Clauses—What is Insurance Intent?,* 32 Wayne L.Rev. 1523 (1986). Particularly where the nature of the act itself is outrageous or egregious, courts are reluctant to rely solely upon an insured's own self-serving testimony about the intention behind the act, since such an approach would render the exclusion meaningless without an insured's admission of a specific intent to injure, which human nature renders an unlikely possibility. *Id.* at 1532; *Truck Ins. Exchange v. Pickering,* 642 S.W.2d 113, 116 (Mo.App. W.D. 1982); *Subscribers at Auto. Club, Etc. v. Kennison,* 549 S.W.2d 587, 591 (Mo.App. E.D.1977).

Courts have devised two similar yet distinct ways of dealing with this situation, depending on whether the jurisdiction has adopted a subjective or objective test to determine the intent of the insured. A majority of courts employ a subjective standard, which focuses upon the insured's own state of mind, and excludes coverage based upon the insured's actual, subjective desire to cause harm. Note, 32 Wayne L.Rev. at 1531–32.

A minority of courts employ an objective standard, which focuses upon what a reasonable person would have done in a given situation, and excludes coverage when a reasonable person would have foreseen harm from his or her acts. *Id.* at 1534.

While these two approaches are conceptually distinct, in practice they are quite similar because courts that employ the subjective test add a second prong to the test as a result of their reluctance to accept the insured's own testimony as conclusive on the question of intent. *Id.* at 1532. Thus, even though the focus is still on the insured's own state of mind, in certain cases courts can infer, as a matter of law, what the insured's state of mind was from the nature and circumstances of his or her conduct. *Id.* Typically, the insured's subjective intent to harm can be inferred when the nature and circumstances of the insured's intentional act were such that harm was substantially certain to result. *Id.*

This court has long held that, in cases involving exclusionary clauses such as this, an admission of specific intent is not the only way to show intent to cause harm, and that an insured's intent to cause harm can be inferred as a matter of law from the facts and circumstances surrounding the act. *Pickering,* 642 S.W.2d at 116; *Hanover Ins. Co. v. Newcomer,* 585 S.W.2d 285, 289 (Mo. App. W.D.1979); *Kennison,* 549 S.W.2d at 591. This court has further held that such intent can be inferred as a matter of law when an intentional act results in injuries which are the natural and probable consequences of the act. *Pickering,* 642 S.W.2d at 116; *Kennison,* 549 S.W.2d at 591.

■ While these earlier cases used the words "objective" and "subjective" in a way that suggested an objective test was being articulated, the decisions nevertheless focused upon the expectations of the insured rather than upon the hypothetical reasonable person and foreseeability. Consistent with this focus, this court has subsequently held that an insured's intent in such situations "extends not only to those consequences which are desired, but also to those *which the actor believes* are substantially certain to follow from what the actor does." *Lacy,* 825

S.W.2d at 314–15.[1] It is clear, therefore, that this court adheres to a subjective test with the added prong that the insured's subjective intent can be inferred as a matter of law when an intentional act results in injuries which are the natural and probable consequences of the act.[2]

Applying this test to the case at bar, we can infer, as a matter of law, that Franz intended to harm Cellie Dudley, since that is a natural and probable consequence of forcibly pushing a six-year-old's hand into dog feces. Accordingly, the judgment of the trial court is affirmed.

All concur.

---

1. *Pacchetti*, with its emphasis on the subjective intent of the insured, also implicitly rejects the objective test.

2. An exception to this rule is where the insured's act involves a sexual assault, a situation with distinct criminal and public policy concerns. In *State Farm Fire & Cas. Co. v. Caley*, 936 S.W.2d 250, 254 (Mo.App. W.D.1997), we held the subjective intent of the insured to be irrelevant in such a case.