**CAMERON MUTUAL INSURANCE CO., Plaintiff/Respondent,**

v.

**Larry MOLL and Sharon Moll, Defendants/Appellants.**

**No. ED 78245.**

Missouri Court of Appeals, Eastern District, Southern Division.

July 10, 2001.

Albert C. Lowes, Lowes & Drusch, David J. Roth II, Cape Girardeau, MO, for Defendants/Appellants.

David M. Remley, Rice, Spaeth, Heisserer, Summers & Remley, Cape Girardeau, MO, for Plaintiff/Respondent.

RICHARD B. TEITELMAN, Judge.

Cameron Mutual Insurance Company ("Cameron") brought a declaratory judgment action, seeking a determination of whether the conduct of its insureds, Larry and Sharon Moll, was covered by the Molls' farm insurance policy. At issue in the declaratory judgment action was whether the conduct of Mr. and/or Mrs. Moll constituted an "occurrence" as defined in the insurance policy. The trial court entered judgment for Cameron, concluding that because Mr. Moll's conduct was intentional, it did not constitute an "occurrence" and that Cameron therefore had no duty to defend or indemnify Mr. or Mrs. Moll. It is from this judgment that the Molls appeal. For the reasons set forth below, we affirm in part, and reverse in part.

## FACTS

On July 9, 1996 Larry Moll arrived home from work and saw two 14–year–old boys fishing off the dock in his pond. Angry at seeing trespassers on his property, Mr. Moll went to his house, grabbed a shotgun and went down to the pond. Upon arrival, he fired one shot into the pond to get the boys' attention. He then went to the dock to confront the boys and to "teach them a lesson." Believing that he did not have the boys' "undivided attention," Mr. Moll struck one of the boys on the head with the shotgun and grabbed the other by the neck with his left hand.

One of the boys was carrying a large sheath knife. Mr. Moll took the knife away and threw it into the pond. Subsequently, Mr. Moll instructed the boys to remove their clothes. When they protested, Mr. Moll asked them if they really wanted to argue with someone with a gun. The boys took off all of their clothes and threw them in the pond. No additional weapons were found. Mr. Moll escorted the boys to his home, had them sit on the gravel in his driveway, went inside his house, and got a video camera. He then asked the boys to identify themselves by name on the videotape.

The Perry County Sheriff's Department was summoned to the Molls' property. The officers arrived, released the boys, and interrogated Mr. Moll. Mr. Moll eventually pleaded guilty to misdemeanor assault charges relating to his battery of the two boys.

Cameron filed its petition for declaratory judgment, naming both Mr. and Mrs. Moll, as well as the two boys and their respective custodial parents, as defendants. In its petition, Cameron alleged that because Mr. Moll's conduct fell within the policy's "expected or intended" exclusion, it was not an "occurrence." Therefore, Cameron claimed, it had no contractual or other legal duty to defend or indemnify the Molls against any claim, suit or cause of action brought against them regarding the events of July 9, 1996.

The relevant portion of the policy provides as follows:

> Coverage L—Personal Liability: The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence…

> "Occurrence" means accident, including continuous or repeated exposure to conditions which result in bodily injury or property damage *neither expected nor intended from the standpoint of the insured.* (emphasis added).

The trial court granted declaratory relief to Cameron, finding that the coverage for both Mr. and Mrs. Moll was excluded under the policy definition of "occurrence."

### STANDARD OF REVIEW

When reviewing a declaratory judgment, our standard of review is the same as in any other court tried case. *McDermott v. Carnahan*, 934 S.W.2d 285, 287 (Mo.banc 1996). We are required to sustain the judgment of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). In applying this standard, we review both the law and the evidence of the case, giving due regard to the trial court's opportunity to judge the credibility of the witnesses. Rule 73.01(c)(1) and (2).

### POINT I

The Molls' first point on appeal claims that the trial court erred in concluding that coverage under the policy was excluded for Mr. Moll. Mr. Moll contends there was no showing that he intended his conduct to injure the boys and that his conduct therefore constitutes an "occurrence" entitling him to coverage.

■ Missouri law provides that coverage is barred by the "expected and intended" language if it is shown that (1) the insured intended the acts causing the injury, and (2) injury was expected or intended from these acts. *American Family Mut. Ins. v. Pacchetti*, 808 S.W.2d 369, 371 (Mo.

banc 1991). The burden is on the insurer to establish that the exclusion bars coverage. *Id.* at 370, citing, *Farmers and Merchants Ins. Co. v. Cologna*, 736 S.W.2d 559, 562 (Mo.App. S.D.1987).

■ Whether Mr. Moll's conduct was intentional is not disputed. The issue is whether Mr. Moll expected or intended to cause the boys' injuries.[1] Mr. Moll contends that the only direct evidence of his intent is his testimony that he intended to "teach the children a lesson" to protect them from hazards on the farm. He maintains that the possibility of psychological and physical injury did not even cross his mind.

In the context of exclusion clauses such as this one, where an insured claims there was a benign intent behind a harmful act, Missouri courts have employed two different tests to assess the intent of the insured. *American Family Mutual Ins. v. Franz*, 980 S.W.2d 56, 58 (Mo.App. W.D. 1998). Under the "subjective" test, the coverage is excluded based upon the insured's own actual subjective intent to cause harm. *Id.* Conversely, under the "objective" test, coverage is excluded if it is determined that a hypothetical reasonable person would have foreseen harm from his or her acts. *Id.*

■ It is not clear from the record whether the trial judge applied a subjective or objective standard in determining that the boys' injuries were expected or

---

[1] This case is thus distinguishable from the recent decision in *James v. Paul*, 49 S.W.3d 678 (Mo. banc, 2001), which held that an insured's plea of guilty to a charge of first degree assault in connection with a stabbing incident meant that he was barred by collateral estoppel from later asserting that his act of stabbing the victim was not intentional, thereby resulting in denial of coverage under an "intended and expected" exclusion. In that case, the issue was whether the conduct itself was intentional. *James,* at *3. Here, in contrast, the conduct was admittedly intentional, and the issue is whether Mr. Moll intended or expected injury to result therefrom. Mr. Moll is not barred by collateral estoppel from claiming that he did not intend such harm, since he pled guilty only to misdemeanor assault in connection with his conduct—an offense which does not require proof that the defendant necessarily intended any injury to result from his actions. See Section 565.070 RSMo 2000.

intended. Whether a subjective or objective approach was used, however, makes little practical difference. *Franz*, 980 S.W.2d at 58. Even when the subjective approach is used, an insured's subjective intent to cause injury can still be inferred from the nature and circumstances of the insured's intentional acts, especially when an intentional act results in injuries which are the natural and probable consequence of such an act. *Id.* This is because courts are reluctant to accept the insured's own testimony as conclusive on the question of intent *Id.* Thus, "an admission of specific intent is not the only way to show intent to cause harm; it can be inferred from facts and circumstances surrounding an act." *Truck Insurance Exchange v. Pickering*, 642 S.W.2d 113, 116 (Mo.App. W.D.1982), citing, *Camp v. John Hancock Mut. Life Ins. Co.*, 165 S.W.2d 277, 281[5] (Mo.App. 1942).

We agree with Mr. Moll that in this case a subjective standard must be used in determining whether the injuries were expected or intended. Where, as here, the policy language is clear and unambiguous, we must enforce that policy as written. *Hempen v. State Farm Mut. Auto. Ins. Co.*, 687 S.W.2d 894 (Mo.banc 1985). In the present case, the policy language requires us to look at whether the injury was expected and intended "from the standpoint of the insured." This language plainly suggests a subjective standard should be used, and we will interpret the policy as written.[2]

However, Mr. Moll's problems cannot be solved by labeling the test "objective" or "subjective." The trial judge, sitting as the trier of fact, is in the best position to determine credibility. Here,

the trial court heard Mr. Moll's testimony, but was also presented with extensive evidence concerning the surrounding circumstances of Mr. Moll's conduct and that he intended the conduct. This evidence, coupled with the nature of Mr. Moll's acts, led the trial court to reasonably infer that Mr. Moll, in his own mind, expected or intended to inflict some kind of harm or pain upon the boys to deter them from returning to his property. The court expressly found that he intended to apprehend the boys on the dock, assault both of them, escort them to his home and videotape them. The court further found that "in committing each of these individual intentional acts, Mr. Moll either intended or expected that the boys would sustain some kind of negative consequence." That finding is supported by substantial evidence. Point I is denied.

## *POINT II*

In their second point on appeal, the Molls allege that the trial court erred in finding that because Mr. Moll's conduct did not constitute an "occurrence" within the meaning of the policy, Cameron had no obligation to defend or indemnify Mrs. Moll.

Cameron first argues that Mrs. Moll waived this issue by failing to sustain her burden of rebutting Cameron's *prima facie* case that the coverage exclusion applied. The issue is not waived. For the expected and intended exclusion to apply, the burden is on the insurer to show both that the insured intended the acts causing an injury, and that the injury was expected or intended from these acts. *Pacchetti*, 808 S.W.2d at 371. There is no indication in

---

2. Cameron candidly acknowledges in its brief on appeal that the subjective standard applies in this particular case, stating: "Respondent agrees that under the language of the policy

in question it is the Appellant's subjective intent that is the appropriate measure of whether he intended or expected [harm] to flow from his conduct."

the record that Cameron ever made a *prima facie* case with regard to the conduct of Mrs. Moll. The only finding of fact concerning Mrs. Moll was that she summoned the Sheriff's Department.[3] The trial court did not find that her conduct did not constitute an occurrence within the meaning of the policy. The trial court did not find that any intentional conduct of Mrs. Moll caused the boys any injury, and even if it had, there is no evidence in the record that Mrs. Moll expected or intended harm to result from her acts. Cameron did not meet its burden of proving the expected and intended clause excludes coverage to Mrs. Moll.

■ Cameron also argues that the Molls' second point on appeal should be denied because Mr. Moll's conduct was properly imputed to Mrs. Moll, in that his conduct served the "family purpose" of protecting the couple's jointly owned property. Cameron, however, cites no case law for this proposition. Moreover, assuming *arguendo* that Mr. Moll's acts could be imputed to Mrs. Moll under Cameron's family purpose theory, the trial court explicitly rejected Mr. Moll's argument that his intent was merely to protect his property. That finding is supported by substantial evidence. Accordingly, Mr. Moll's intentional conduct cannot be imputed to Mrs. Moll. We conclude that the court erred in ruling that Cameron had no obligation to defend or indemnify Sharon Moll for her own *separate* conduct related to the events of July 9, 1996, as no substantial evidence supported that determination.

The decision of the trial court is affirmed in part (with regard to Mr. Moll) and reversed in part (with regard to Mrs. Moll).

JAMES R. DOWD, P.J., and MARY RHODES RUSSELL, J., concur.

---

**3.** If she did so, it is difficult to imagine how the act of calling the proper law enforcement authorities could have been expected or intended to cause harm to the boys. Even so, we note that the transcript contains no evidence that Sharon Moll was in fact the person who eventually summoned the Sheriff's Department. The only testimony at trial on this point was that Mr. Moll's *mother* was the individual who called the Sheriff. Of course, the trial court is free to disbelieve evidence— but disbelief of affirmative evidence that an act was done by one particular individual is not necessarily the same thing as substantial evidence that the act was done by another particular individual.