# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3628

_____

| | | |
|---|---|---|
| Allstate Insurance Company, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Tonja Blount; Nathan Smith; | * | Western District of Missouri. |
| Andrew J. Grimes; Barbara | * | |
| Grimes; Mitchell Y. Choi, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: March 15, 2007
Filed: June 26, 2007

_____

Before COLLOTON, HANSEN and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Allstate Insurance Company ("Allstate") brought a declaratory judgment suit seeking a determination that the homeowner's insurance policy it issued to Barbara Grimes ("Grimes") did not provide coverage for damages awarded against her in a wrongful death suit. The district court held that the damages were covered by the policy and granted summary judgment against Allstate. For the reasons that follow, we affirm in part and reverse in part.

## I.    BACKGROUND

This case arises out of the underlying wrongful death suit Tonja Blount filed in the Circuit Court for Greene County, Missouri, against Nathan Smith, Grimes, Andrew Grimes and Mitchell Y. Choi (collectively, "defendants"), alleging that defendants negligently caused or contributed to the death of her son, Jeffrey Cale Gormley, who had became ill, and eventually died, after drinking alcohol and using drugs while at Grimes's home.[1]

At the time of the alleged actions, Grimes was insured under a homeowner's insurance policy with Allstate. The policy covered "damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which the policy applies" ("damages provision"). Allstate defended Grimes under a reservation of rights in the wrongful death proceeding.[2] At the same time, however, Allstate filed the instant declaratory judgment suit in federal court seeking a determination that the negligence claims in the wrongful death suit were not covered by the damages provision and, alternatively, were excluded under the policy's exclusion for "bodily injury or property damage intended by, or which may be reasonably expected to result from the intentional or criminal acts or omissions of, any insured person" ("criminal acts exclusion").

---

[1]With respect to Grimes, the suit alleged that she negligently: failed to supervise Gormley, failed to control Gormley, failed to protect Gormley, failed to provide assistance to Gormley, supervised Gormley, and created a substantial risk to the life of Gormley. We will refer to these collectively as the "negligence claims."

[2]Defending an insured under a "reservation of rights" allows the insurer to assume the defense of the claim and later "contest whether or not a judgment ultimately entered in the case f[alls] within the policy coverage." *Butters v. City of Independence*, 513 S.W.2d 418, 424-25 (Mo. 1974).

While the wrongful death and declaratory judgment suits were pending, Grimes faced state criminal charges related to the death of Gormley. In the criminal proceeding, Grimes pled guilty to first-degree involuntary manslaughter, a violation of Mo. Rev. Stat. § 565.024.1.[3] Specifically, Grimes admitted to "recklessly caus[ing] the death of Jeffrey Cale Gormley by providing her home to minors for the consumption of alcohol and/or controlled substances without adult supervision."

At the guilty plea hearing, the prosecutor recited the factual basis for the charge. Following the prosecutor's factual recitation, Grimes admitted to the facts and entered her guilty plea.[4] The admitted facts established that Choi, Smith, Andrew Grimes and Gormley drove to a convenience store where they purchased two cases of beer and a bottle of bourbon. The boys then drove to Grimes's home where they arrived around 7:30 p.m. There, Gormley drank alcohol and consumed Xanax. At some point during the evening Gormley fell and hit his head, creating a knot above his eye. Thereafter, Gormley laid down underneath a coffee table where he passed out. Around 11:00 p.m. that evening, Smith called Tracie Whitlock, Gormley's girlfriend, to inform her that Gormley was "having problems." Andrew Grimes called her around 1:00 a.m. to tell her that Gormley did not "look right" and was having trouble breathing. Whitlock instructed Andrew Grimes to alert his mother of Gormley's condition and to call her back if the problems persisted. Whitlock did not receive any other phone calls. Grimes was aware that Gormley was sixteen years old and had been drinking and doing drugs in her home. Her only instruction to the boys was to move the coffee table so that Gormley would not break it when he awoke. Eventually, emergency personnel arrived at Grimes's home where they pronounced Gormley dead. Gormley

---

[3]The statute provides that "[a] person commits the crime of involuntary manslaughter in the first degree if he or she . . . [r]ecklessly causes the death of another person." Mo. Rev. Stat. § 565.024.1.

[4]In the response to Allstate's motion for summary judgment before the district court, Grimes admitted that she pled guilty because she acted as alleged by the prosecution in the criminal complaint and at the plea hearing.

died from respiratory failure resulting from intoxication. The medical examiner concluded that had Gormley received medical attention he would have lived.

Following Grimes's criminal conviction, Allstate moved for summary judgment against Grimes, Andrew Grimes and Blount in the declaratory judgment suit. In effect, Allstate argued for the application of non-mutual collateral estoppel,[5] asserting that Grimes's guilty plea and resulting criminal conviction prevented her from challenging the fact that the policy's damages provision does not apply and that the criminal acts exclusion does apply, thereby precluding coverage for any damages awarded against her in the wrongful death suit. The district court denied Allstate's summary judgment motion, holding that the negligence cause of action pled in the wrongful death suit was "separate and distinct" from the conduct established by the guilty plea and conviction and that "it is likely coverage exists for this separate cause of action."

Also subsequent to Grimes's criminal conviction, Blount, Grimes and Andrew Grimes entered into an agreement under Mo. Rev. Stat. § 537.065 with respect to the wrongful death suit. An agreement under this provision "expressly authorizes an insured to settle a personal injury or wrongful death action by agreeing that the plaintiff may collect the settlement only against the insurer." *Esicorp, Inc. v. Liberty Mut. Ins. Co.*, 193 F.3d 966, 971 (8th Cir. 1999). It does not determine the insured's liability but merely limits enforceability of a judgment. *O'Donnell v. St. Luke's Episcopal Presbyterian Hosps.*, 800 F.2d 739, 741 (8th Cir. 1986). In the present case, the agreement provided that:

---

[5]Non-mutual collateral estoppel "allow[s] strangers to the prior suit to assert collateral estoppel against parties to the prior suit to bar relitigation of issues previously adjudicated." *Oates v. Safeco Ins. Co. of Am.*, 583 S.W.2d 713, 719 (Mo. banc 1979).

> [Blount] agrees that to satisfy any judgment which may be obtained against [Grimes or Andrew Grimes] by [Blount], [Blount] will execute, garnish or collect solely from any available liability insurance coverage under Allstate Insurance Company homeowner's policy . . . .

The § 537.065 agreement also provided that the parties agreed to allow a consent judgment of $1,500,000 to be entered in favor of Blount and against Grimes and Andrew Grimes, jointly and severally. Finally, the agreement noted that Grimes and Andrew Grimes expressly denied all liability. The parties waived a trial by jury. The trial court stated that:

> [h]aving heard the evidence, and with the consent of defendants Andrew Grimes and Barbara Grimes, [the court] finds the issues in favor of plaintiff Tonja Blount for the wrongful death of [Gormley]. . . . The Court, also with the consent of defendants Andrew Grimes and Barbara Grimes, awards damages in the amount of $1,500,000 . . . and further finds this amount to be fair and reasonable.

The trial court then entered a consent judgment consistent with the § 537.065 agreement.

Thereafter, Grimes, Andrew Grimes and Blount moved for summary judgment in the declaratory judgment suit, asserting that the judgment in the wrongful death suit "serves as res judicata as to the issue of the validity of the claims of negligent failure to render aid." They argued that because it had been conclusively established that Grimes acted negligently and because negligence constitutes an "occurrence" under the policy's damages provision, there was no genuine issue of material fact as to whether the civil damages award was covered under that provision. The district court agreed and entered summary judgment in favor of Grimes, Andrew Grimes and Blount.

The next day, the district court issued an order directing the parties to show cause as to why the suit should not be dismissed as to defendants Smith and Choi, neither of whom were parties to the motions for summary judgment. No party filed a response. Consequently, the district court dismissed these two defendants. Allstate now appeals the district court's denial of summary judgment in favor of Allstate, its entry of summary judgment in favor of Grimes, Andrew Grimes and Blount (collectively, "Appellees"), and its dismissal of Smith and Choi.

## II. DISCUSSION

### 1. Standard of Review

"In reviewing the district court's grant of summary judgment, we review de novo its conclusions of law, including the availability of issue preclusion," also called collateral estoppel. *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 757 (8th Cir. 2003) (internal citations omitted); *see also Boudreau v. Wal-Mart Stores, Inc.*, 249 F.3d 715, 719 (8th Cir. 2001) ("A trial court's determination as to whether the legal prerequisites for issue preclusion have been met on the facts before it is a mixed question of law and fact, subject to de novo review by this court.").

Interpretation of an insurance policy and application of collateral estoppel are matters of state law. *Am. Family Mut. Ins. Co. v. Co Fat Le*, 439 F.3d 436, 439 (8th Cir. 2006); *FAG Bearings*, 335 F.3d at 758. It is undisputed that the issues in this case are governed by Missouri law. "In interpreting state law, we are bound by the decisions of the state's highest court." *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006) (internal quotation omitted). "When a state's highest court has not decided an issue, it is up to this court to predict how the state's highest court would resolve that issue." *Id.* "Decisions of intermediate state appellate courts are persuasive authority that we follow when they are the best evidence of what state law is." *Id.*

## 2.      Appellees's Motion for Summary Judgment

Although Appellees's motion for summary judgment was filed and decided after Allstate's motion, we choose to address it first.  Once the district court had denied Allstate's motion for summary judgment—concluding that Grimes's guilty plea and conviction did not, by way of collateral estoppel, establish that the criminal acts exclusion applied—it granted Appellees's motion for summary judgment.  In so doing, the district court held that the wrongful death consent judgment conclusively established that there was an "occurrence" under the policy's damages provision and that therefore the damages entered against Grimes were covered under the policy. Allstate argues that the district court erred in granting summary judgment to Appellees because the consent judgment entered in the wrongful death suit pursuant to the § 537.065 agreement does not prevent, or collaterally estop, Allstate from litigating the issue of coverage.

In support of its grant of summary judgment to Appellees, the district court relied on *Short v. Taylor* and *Gunning v. State Farm Mutual Automobile Insurance Co.* for the proposition that a "judgment entered by consent of the parties . . . within the court's jurisdiction . . . should be given the same force as any other judgment." *Gunning*, 598 S.W.2d 479, 481 (Mo. Ct. App. 1980); *accord Short*, 38 S.W. 952, 954 (Mo. 1897).  This proposition is generally true when the judgment is being enforced against a party to the underlying § 537.065 agreement that precipitated the consent judgment.  By contrast, where the consent judgment is sought to be enforced against a non-party to the underlying agreement, the analysis is somewhat different.  In a scenario such as the present one, the Missouri Supreme Court has held that § 537.065 agreements do not deprive an insurer of its right to be heard on the question of policy coverage.  *Butters v. City of Independence*, 513 S.W.2d 418, 425 (Mo. 1974).  In *Butters*, the insured city entered into a § 537.065 agreement with an injured party and sought to enforce it against the insurer.  *Id*. at 424-25.  The Missouri Supreme Court noted that, by entering judgment pursuant to the § 537.065 agreement, the trial court

-7-

had "purported to determine the question [of the insured's liability] without a trial." *Id*. at 425. Noting that the "insurer has had no opportunity to be heard on the issue of the factual basis for the [insured]'s liability," the Missouri Supreme Court held that the insurer "was entitled to a trial on the coverage issue." *Id*. Such is the case here. Neither the § 537.065 agreement nor the consent judgment indicate the factual basis for Grimes's liability, and both are unclear as to which of the several negligence claims are the basis upon which the consent judgment was entered. Thus, Allstate has had no opportunity to develop the factual basis for Grimes's liability or be heard on its policy defenses. *See id*. As a result, Allstate is entitled to litigate these issues. *See id.*

As Allstate points out, the result obtained by applying *Butters* can also be reached by examining the traditional elements of collateral estoppel.[6] "The underlying goal of issue preclusion, also known as collateral estoppel, is to promote judicial economy and finality in litigation." *FAG Bearings Corp.*, 335 F.3d at 758 (applying Missouri law). To determine whether to apply non-mutual collateral estoppel, Missouri courts consider the following four factors:

> (1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.

---

[6]Although Appellees broadly characterized their argument before the district court as res judicata, the Supreme Court has recognized that res judicata encompasses "issue preclusion, long called 'collateral estoppel' (an issue of fact or law, actually litigated and resolved by a valid final judgment, binds the parties in a subsequent action, whether on the same or a different claim)." *Baker v. General Motors Corp.*, 522 U.S. 222, 233 n. 5 (1998) (internal citations omitted).

*James v. Paul*, 49 S.W.3d 678, 682 (Mo. banc 2001).  The doctrine will not apply where doing so would be inequitable.  *Id*.  In the present matter, we need not decide whether Appellees can satisfy the first, second or fourth prongs because we hold that they cannot satisfy the third.

*James* was decided on facts similar to those in this case and resulted in the Missouri Supreme Court's holding that the third factor in the collateral estoppel analysis had not been satisfied.  In that case, the insured pled guilty to first-degree assault and was subsequently sued for negligently causing the injuries resulting from the assault.  *Id*. at 680-81.  As in the present matter, in *James* the insured and the injured party entered a § 537.065 agreement whereby the injured party agreed to limit execution of the judgment in the negligence suit to the insured's homeowner's policy.  *Id*. at 681.  After obtaining a judgment, the injured party filed a garnishment action against the insurer to collect on it, arguing that the insurer was bound by the judgment in the negligence suit and that collateral estoppel prevented it from denying coverage.  *Id*. at 681-82.  The Missouri Supreme Court held that the insurer was not a party  and was not in privity with any party to the underlying negligence suit, and it refused to apply collateral estoppel.  *Id*. at 689.  The court stated that in the underlying negligence suit:

> [b]oth [the insured] and [the injured party] had identical interests in having [the insured]'s conduct declared unintentional so as to shift the obligation of paying damages to [the insurer].  [The insurer]'s interest in relying on the criminal plea and the coverage exclusion were not aligned with either that of [the injured] or [the insured] in the civil action.  As a result, the privity necessary to impose collateral estoppel against [the insurer] was absent.  Finally, the inherent conflict between [the insurer] and [the insured] prevented [the insurer] from effectively asserting its policy defenses in the civil action until the garnishment proceeding.

*Id*. The same is true here.[7] An inherent conflict of interest prevented Allstate from raising its policy defenses in the underlying civil suit while defending the Grimeses under a reservation of rights. *See id*. Thus, Appellees cannot satisfy the third prong necessary for collateral estoppel because Allstate, like the insurer in *James*, was not a party and was not in privity with any party to the underlying wrongful death suit. Accordingly, we hold that the wrongful death consent judgment does not bar Allstate from litigating the issue of policy coverage, and we reverse the district court's grant of summary judgment to Appellees.

### 3. Allstate's Motion for Summary Judgment

Having determined that the district court's grant of summary judgment in favor of Appellees must be reversed, we next turn to Allstate's argument that the district court erred in denying summary judgment in its favor. In its motion for summary judgment, Allstate argued that Grimes is collaterally estopped by her guilty plea and conviction from challenging the fact that the policy's damages provision does not apply and, alternatively, that the criminal acts exclusion does apply.

First we address the damages provision, which provides that "Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damages arising from an occurrence to which this policy applies." The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage." The policy does not define the term "accident."

---

[7]Allstate defended the Grimeses under a reservation of rights whereas the insurance company in *James* declined to defend the insured in the civil case. *Id*. at 681. This difference is irrelevant to the collateral estoppel analysis. *See Cox v. Steck*, 992 S.W.2d 221, 225 (Mo. Ct. App. 1999) (applying the same reasoning as *James* where an insurance company defended the insured under a reservation of rights).

Allstate argues that Grimes's act of committing first-degree involuntary manslaughter cannot be an "accident" and, therefore, Gormley's death is not an occurrence under the damages provision of the policy. Allstate's characterization of the issue is flawed. To determine coverage issues, Missouri law provides that courts should "compare the allegations of the underlying complaint to the language of the insurance policy." *Reliance Ins. Co. v. Shenandoah South, Inc.*, 81 F.3d 789, 791 (8th Cir. 1996) (citing *Benningfield v. Avemco Ins. Co.*, 561 S.W.2d 736, 737 (Mo. Ct. App. 1978)). The underlying complaint in the wrongful death suit alleged claims of negligence. Therefore, the correct question is whether these claims constitute an "occurrence" under the policy's damages provision. The district court held that they do, and we agree.

Under Missouri law, a liability policy defining "occurrence" as an accident necessarily encompasses a negligence claim. *Woods v. Safeco Ins. Co.*, 980 S.W.2d 43, 49 (Mo. Ct. App. 1998) ("[W]hen a liability policy defines 'occurrence' as meaning 'accident' . . . Missouri courts [consider this] to mean injury caused by the negligence of the insured.") (internal quotation omitted) (alteration in original). Accordingly, we hold that each negligence claim in the wrongful death suit constitutes "an occurrence to which the policy applies" under the damages provision.

Although we hold that the negligence claims are covered by Grimes's homeowner's policy, Allstate may still avoid liability if it can demonstrate that the criminal acts exclusion applies and the so-called "concurrent cause doctrine" does not. Under Missouri law, the concurrent cause doctrine "provides that when an insured risk and an excluded risk constitute concurrent proximate causes of an injury, a liability insurer is liable so long as one of the causes is covered by the policy." *Co Fat Le*, 439 F.3d at 439. In determining whether there are concurrent proximate causes of an injury, Missouri courts examine whether each alleged cause could have independently brought about the injury. *Id.* (citing *Hunt v. Capitol Indem. Corp.*, 26 S.W.3d 341, 345 (Mo. Ct. App. 2000)). Under the doctrine, an insured seeking coverage under a

provision of a policy must be able to establish an independent claim under that provision, while at the same time not relying on an element of a claim that falls under an exclusion of the policy. *Id*. (citing *Centermark Props., Inc. v. Home Indem. Co.*, 897 S.W.2d 98, 103 (Mo. Ct. App. 1995)). If the insured cannot so establish, the exclusion prevails. *See id*. at 440. Thus, in the present case, only if Grimes's negligent failure to supervise, control, protect and provide assistance to Gormley and her negligent creation of a substantial risk to his life could have independently caused Gormley's death may we employ the concurrent cause doctrine. Focusing only on Grimes's negligent failure to provide assistance to Gormley, the district court held that this claim was "clearly distinct" from Grimes's act of providing her home to minors for the consumption of alcohol and/or controlled substances without adult supervision." We disagree.

In *Hunt*, a lounge patron was killed outside a lounge. 26 S.W.3d at 342. The victim's family sued the lounge owner, claiming that he negligently failed to protect the victim from his assailant. *Id*. The court held that the failure to protect was not a distinct cause from the assault and battery—the latter being excluded under the insurance policy—because "[w]ithout the underlying assault and battery, there would have been no injury and therefore no basis for the [family]'s action against the [lounge owner] for negligence." *Id*. at 345. Similarly, in *Co Fat Le*, the insured's son and his four friends parked a vehicle inside the insured's garage and closed the garage door. 439 F.3d at 438. The next morning, the son and his friends were found dead inside the vehicle. *Id*. The parents of the friends sued the insured for wrongful death, asserting a claim of negligent failure to warn the decedents of the risks of carbon monoxide poisoning. *Id*. The insurer brought a declaratory judgment action seeking a determination that the claim for negligent failure to warn was excluded under the policy's vehicle-use exclusion. *Id*. The insured argued that the failure to warn was an independent cause of death and was therefore covered under the concurrent cause doctrine. *Id*. at 439. Our court disagreed. Applying Missouri law, we held that "there would have been no injury if [the insured] had not run the automobile in the closed

garage. Accordingly, the failure to warn was not an independent concurrent proximate cause of the decedents' deaths." *Id*. at 440.

The present case fits squarely within *Hunt* and *Co Fat Le*. Without Grimes's underlying act of providing her home to minors for the consumption of alcohol and/or controlled substances without supervision, there would be no injury and no basis for the wrongful death suit. In other words, any negligent failure to supervise, control, protect and provide assistance to Gormley, or any negligent creation of a substantial risk to his life, was derivative of, not independent of, Grimes's act of providing her home to the minors for the consumption of alcohol and controlled substances without adult supervision. Because Appellees have failed to show that the covered negligence claims could have independently brought about Gormley's injury and resulting death, the concurrent cause doctrine is not applicable. *See id*. at 439.[8]

Having determined that the concurrent cause doctrine does not apply, if Allstate can prove that the criminal act exclusion applies, then the exclusion will prevail and the damages entered against Grimes will not be covered under her homeowner's insurance policy. *See Co Fat Le*, 439 F.3d at 439 ("Under Missouri law, the insured has the burden of proving coverage, and the insurer has the burden of proving that an insurance policy exclusion applies. "). To this end, Allstate argues that Grimes's guilty plea and conviction preclusively establish, under the doctrine of offensive collateral estoppel, that the policy's criminal acts exclusion applies. Offensive collateral estoppel[9] depends on the same four factors outlined previously. Appellees

---

[8]The case cited by the district court, *Am. Home Assurance Co. v. Pope*, 360 F.3d 848 (8th Cir. 2004), is not instructive. That case only addressed whether the claims were covered or excluded by the policy at issue. *Id*. at 851-52. Significantly, it did not reach the issue of whether the two claims were "concurrent and proximate causes."

[9]Offensive collateral estoppel is an "attempt by a plaintiff to rely on a prior adjudication of an issue to prevent the defendant from challenging a fact necessary to the plaintiff's case and on which the plaintiff carries the burden of proof." *James*, 49

-13-

do not challenge Allstate's satisfaction of the second, third or fourth prongs, and we therefore focus on the first—"whether the issue decided in the prior adjudication was identical to the issue presented in the present action." *See James*, 49 S.W.3d at 682.

The language of an insurance contract is to be given its ordinary and plain meaning. *Walters v. State Farm Mut. Auto. Ins. Co.*, 793 S.W.2d 217, 219 (Mo. Ct. App. 1990). The policy's criminal acts exclusion states that "we do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person." The parties do not dispute that Grimes is an insured person under the policy and that she did not intend to injure Gormley. Thus, the plain language of the exclusion requires Allstate to prove that: (1) Grimes committed an intentional or criminal act; and (2) bodily injury may have reasonably been expected to result from that act. In order for collateral estoppel to apply, Allstate must show that these questions were conclusively decided in a prior adjudication. *See James*, 49 S.W.3d at 682. We address each in turn.

---

S.W.3d at 685. Although Missouri "courts have been less inclined to allow offensive use of the doctrine rather than defensive when mutuality of parties is lacking," *id.* at 685*,* we note that it is nonetheless allowed, *e.g., In re Caranchini*, 956 S.W.2d 910, 912 (Mo. 1997); *State v. Daniels*, 789 S.W.2d 243, 245 (Mo. Ct. App. 1990). Moreover, although Allstate, as the plaintiff in the declaratory judgment suit, seeks to assert the doctrine offensively, the suit was filed in anticipation of a garnishment action foreshadowed by the § 537.065 agreement. In this inevitable garnishment action, we have no doubt that Allstate, the putative defendant, would have raised the same collateral estoppel argument in a defensive fashion. This unique posture assuages any concern we may have regarding the reluctance of Missouri courts to apply the doctrine offensively.

As to the exclusion's first requirement, Allstate argues that Grimes's guilty plea and criminal conviction conclusively establish that there was a criminal act. We agree. It is undisputed that Grimes pled guilty to and was convicted of first-degree involuntary manslaughter. The conviction conclusively establishes that Grimes committed a criminal act, and we hold that Appellees are collaterally estopped from challenging the satisfaction of this part of the exclusion. *See Allstate Ins. Co. v. Burrough*, 120 F.3d 834, 837-40 (8th Cir. 1997) (applying Arkansas law) (applying the same criminal acts exclusion presently at issue and holding that the act of furnishing a deadly weapon to a minor as proscribed by the Arkansas criminal code qualified as a criminal act under the exclusion).[10]

In order for Grimes to be collaterally estopped from challenging the satisfaction of the exclusion's second requirement, Allstate must demonstrate that the question of whether bodily injury may have reasonably been expected to result from Grimes's criminal act was decided in a prior adjudication. Because defining the question presented in the present action is "crucial in determining whether issue preclusion is available," *see FAG Bearings*, 335 F.3d at 759, we proceed by applying Missouri law to the language of the policy in an effort to define clearly the question presented under the second part of the exclusion.

First, it is important to note that the policy defines bodily injury as "physical harm to the body," and states that whether the bodily injury is "of a different kind or degree than that intended or reasonably expected" is irrelevant. Even if the policy had not included this provision, such would be the default rule in Missouri. *See Hanover Ins. Co. v. Newcomer*, 585 S.W.2d 285, 289 (Mo. Ct. App. 1979) (holding that where

_____

[10]In light of *Burrough*, we need not address Allstate's argument that acting "recklessly" under Missouri's first-degree involuntary manslaughter statute amounts to acting intentionally. Under the policy, our holding that Grimes's guilty plea conclusively establishes that she acted criminally is sufficient to satisfy this part of the exclusion.

policies exclude coverage for injuries that are intended or expected, the exclusion is "applicable if the insured acts with the intent or expectation that bodily injury will result even though the bodily injury that does result is different either in character or magnitude from the injury that was intended"). Thus, the issue is narrowed to whether, in a prior adjudication, it was established that some degree of physical harm to the body was reasonably expected to result from Grimes's criminal act.

Second, Missouri has employed two different tests to determine whether bodily injury is reasonably expected to result from an insured's act. "Under the subjective test, the coverage is excluded based upon the insured's own actual subjective intent to cause harm. Conversely, under the objective test, coverage is excluded if it is determined that a hypothetical reasonable person would have foreseen harm from his or her acts." *Cameron Mut. Ins. Co. v. Moll*, 50 S.W.3d 329, 332 (Mo. Ct. App. 2001) (internal citations and quotations omitted). Where the policy language is clear and unambiguous, the language of the policy determines which test to apply. *See id.* at 333.

In *Cameron*, the policy excluded claims for bodily injury that were "expected []or intended" from the "standpoint of the insured." *Id.* at 331. The *Cameron* court found that "[t]his language plainly suggests a subjective standard should be used." *Id.* at 333. Likewise, in *Am. Family Mut. Ins. Co. v. Pacchetti*, the policy excluded claims for bodily injury "which is expected or intended by any insured." 808 S.W.2d 369, 370 (Mo. 1991). The court therefore stated that "[i]t remains for the insurer to show that *this particular insured* expected or intended the result which occurred." *Id.* at 371.[11]

---

[11]It was later noted by the Missouri Court of Appeals that "[n]owhere in the *Pacchetti* opinion does the court prohibit the use of the objective standard." *United Servs. Auto. Ass'n Cas. Ins. Co. v. Sorrells*, 910 S.W.2d 774, 778 (Mo. Ct. App. 1995). *But see Am. Family Mut. Ins. Co. v. Franz*, 980 S.W.2d 56, 59 n.1 (Mo. Ct. App. 1998) ("*Pacchetti*, with its emphasis on the subjective intent of the insured, also

However, where a policy excluded claims for bodily injury that "[results] from any occurrence caused by an intentional act of an insured person where the results are reasonably foreseeable," the objective test was used. *Mid-Century Ins. Co. v. L.D.G.*, 835 S.W.2d 436, 437 (Mo. Ct. App. 1992). The *Mid-Century* court distinguished this policy language from that in *Pacchetti*, noting that "[t]he insurance policy pertaining to this appeal, unlike the policy in *Pacchetti*, contains an additional provision excluding coverage for injuries resulting from the intentional acts of the insured which are reasonably foreseeable." *Id.* "This clause requires a determination . . . of whether the transmission of a venereal disease, such as chlamydia, is a reasonably foreseeable result of rape," that is, "one that a reasonable person would recognize . . . could or might occur." *Id.* at 438 (internal quotation omitted). The *Mid-Century* court ultimately applied the exclusion holding that "the transmission of a venereal disease, as a matter of law, is a reasonably foreseeable consequence of rape." *Id.*

In the present case, the language of the policy excludes claims for "bodily injury . . . which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person." Because the policy language at issue here does not focus on the subjective intent of the insured, as it did in *Cameron* and *Pacchetti*, and because it looks to what "may *reasonably* be expected," we believe that it is more akin to the language of the policy exclusion in *Mid-Century*. Thus, in even more narrow terms, the issue becomes whether, in a prior adjudication, it was established that the hypothetical reasonable person would have reasonably expected some degree of physical harm to the body to result from Grimes's criminal act. *See Cameron*, 50 S.W.3d at 332.

---

implicitly rejects the objective test."). We agree with the *Sorrells* court that *Pacchetti* did not reject the objective test altogether. The language of the policy at issue in *Pacchetti* simply required use of the subjective test. *See Cameron*, 50 S.W.3d at 332 (implicitly holding, post-*Pacchetti*, that both tests are intact).

Third, under Missouri law, something is "expected" if there exists a "strong probability [that] the consequences in question would result from [the] acts." *United Servs. Auto. Ass'n Cas. Ins. Co. v. Sorrells*, 910 S.W.2d 774, 777-78 (Mo. Ct. App. 1995) (quotation omitted). The consequence in question in this case is physical harm to the body. Therefore, the issue presented in its most narrow form becomes whether, in a prior adjudication, it was established that a hypothetical reasonable person would conclude that Grimes's criminal conduct created a strong probability that some degree of physical harm to the body would result. The prior adjudication is Grimes's guilty plea and conviction of first-degree involuntary manslaughter.

Arguably, a conviction for first-degree involuntary manslaughter, ipso facto, establishes that a reasonable person would conclude that there was a strong probability that the consequences in question would result. Indeed, the Missouri criminal code defines recklessness, the mental state required under its first-degree involuntary manslaughter statute, as the "conscious[ ]disregard[] [for] a substantial and unjustifiable risk . . . and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Mo. Rev. Stat. § 562.016.4. While one might reasonably conclude that a "substantial and unjustifiable risk" equates to a consequence with a "strong probability"of occurring, our duty in this diversity action is to predict how the Missouri Supreme Court would apply its law to the facts of this case. *Raymond*, 472 F.3d at 534. In *Pacchetti*, the Missouri Supreme Court stated that "[w]e also reject the suggestion that a showing that the insured acted recklessly compels a finding that injury was expected." 808 S.W.2d at 371. Although this isolated statement could be characterized as dictum, we are nonetheless reluctant to disregard such a plain statement from the Missouri Supreme Court. Accordingly, we predict that the Missouri Supreme Court would hold that the issue of whether a reasonable person would conclude that Grimes's criminal conduct created a strong probability that some degree of physical harm to the body would result was not ipso facto decided by Grimes's guilty plea and conviction. Thus, because the first prong of collateral estoppel is not met with respect to the second

-18-

requirement of the criminal acts exclusion, Appellees are not barred from litigating whether it is satisfied.

In sum, we first hold that the negligence claims are covered by the policy's damages provision. We further hold that because the concurrent cause doctrine does not apply in this matter, Allstate can avoid liability if it demonstrates that the criminal acts exclusion applies. With respect to that provision, Appellees are collaterally estopped by Grimes's guilty plea and conviction from challenging the satisfaction of the first requirement, whether Grimes committed a criminal act. Collateral estoppel, however, does not prevent Appellees from challenging the satisfaction of the second requirement of the exclusion, whether bodily injury may have reasonably been expected to result from that criminal act. Thus, we affirm the district court's denial of Allstate's motion for summary judgment.[12]

## 4. The District Court's Dismissal of Defendants Smith and Choi

Finally, we address Allstate's argument that the district court erred in dismissing defendants Smith and Choi. After granting summary judgment to Appellees, the district court issued an order to show cause why the case should not be dismissed as to Smith and Choi. No party responded, and the district court dismissed them. The district court's order dismissing the defendants stated that it was "in light of" its grant of summary judgment to Grimes, Andrew Grimes and Blount. Having reversed that order, we also reverse the district court's dismissal of Smith and Choi.

---

[12]Having reached these conclusions, and as Allstate concedes, we need not address whether Andrew Grimes is covered by the policy's joint-obligations provision, as it is not ripe until a determination is made with respect to whether the criminal acts exclusion applies to Grimes.

## III.   CONCLUSION

We reverse the district court's entry of summary judgment to Appellees and its dismissal of defendants Smith and Choi, and we affirm its denial of summary judgment to Allstate.  We remand for proceedings consistent with this opinion.

_____